32 LRA 658

## NORMAN N. PARKER

### *v.*

## ROBERT W. ORR.

*Filed at Springfield November 1, 1895.*

| 158 | 609 |
|-----|-----|
| 161 | 324 |
| 158 | 609 |
| 158 | 651 |
| 158 | 609 |
| 164 | 27 |
| 158 | 609 |
| 168 | 376 |
| 158 | 609 |
| 183 | 195 |
| 158 | 609 |
| 192 | ⁶ 65 |
| 158 | 609 |
| 194 | ²373 |
| d194 | ²374 |
| 194 | ²375 |
| 196 | ²105 |
| 197 | ⁴436 |
| e100a² | 95 |
| 100a | 98 |
| 158 | 609 |
| 206 | 98 |
| 206 | ⁶102 |
| 158 | 609 |
| 211 | ² 63 |

1. ELECTIONS—*provision as to the kind of cross to be made on ballot is directory.* The capital in parentheses, "(X)" used in directing the manner of voting in section 23 of the Ballot law, is not mandatory as to the exact form of cross to be used, but indicates to the voter how the cross might be made; and the law is satisfied by complying with its language, and "making a cross" in some other form.

2. SAME—*rule that voter's intention controls still prevails.* The rule that a voter should not be deprived of his right to vote through mere inadvertence, mistake or ignorance, if an honest intention can be ascertained from his ballot, is not changed by the Ballot law of 1891, section 26 of which expressly rejects a ballot if the voter "marks more names than there are persons to be elected to an office, or if, for any reason, it is impossible to determine the voter's choice for any office to be filled."

3. SAME—*marking cross opposite name—how far mandatory.* The requirement in said law that the ballot be marked by a cross "in the appropriate margin or place opposite the name," is directory, and under it the voter's intention should be given effect if it can be gathered from his ballot, having due regard to the requirement of secrecy.

4. SAME—*use of distinguishing mark destroys the vote.* The use of a mark furnishing means of avoiding the secrecy of a ballot requires its rejection, though the law contains no direct prohibition of distinguishing marks; and this is so even though the mark used may indicate the voter's candidate or party choice.

5. SAME—*honest attempt to follow the law must appear.* An honest attempt to follow the directions of the law requiring a cross to be made in the appropriate margin or place opposite the name on the ballot, must appear in order to permit the ballot to be counted.

6. SAME—*what kind of marks on ballots require their rejection.* Writing the word "democratic" at the head of a ticket, making a single mark through the circle or square, making a circle or other irregular character (not being any form of a cross) within the circle or square, making a cross opposite the names but outside the square, and signing the name of the voter to the ballot, are all modes of marking which disregard the directions of the law besides destroying the ballot's secrecy, and ballots so marked should be rejected.

7. SAME—*imperfect cross, honestly made, entitles vote to be counted.* Imperfect success in marking a cross in the proper places to indicate a choice of candidates, where there was a clear intention to conform to the statute and not to distinguish the ballot, will not require its rejection.

8. SAME—*erasing name does not destroy vote.* The erasure of names of candidates by pencil marks drawn through them does not necessarily constitute a distinguishing mark, which requires a rejection of the ballot as to other candidates.

9. SAME—*effect of cross in circle at the head of two tickets.* Marking a ballot by a cross in a circle at the head of two of the tickets printed thereon will not prevent the vote being counted for a candidate named on one ticket for an office for which no candidate is named on the other, although such ballot cannot be counted for a candidate for an office for which both tickets present candidates.

10. SAME—*a mark which is not a cross is not sufficient.* A mark on a ballot which bears no resemblance to a cross, and is not an attempt to make a cross of any kind, will not permit the ballot to be counted.

11. SAME—*mark resembling cross, which is blurred—effect.* A mark made with ink and somewhat blurred, even if it cannot be said to be a cross, strictly speaking, if it shows an attempt to make a cross, may be sufficient to allow the ballot to be counted.

APPEAL from the County Court of Christian county; the Hon. LYMAN G. GRUNDY, Judge, presiding.

J. E. HARRISON, and RICKS & CREIGHTON, for appellant:

The purposes of the Ballot Reform act of 1891 were to secure the freedom, purity, uniformity and secrecy of the ballot in elections. See title of act, Session Laws of 1891, p. 108; *Curran* v. *Clayton,* 86 Me. 42.

The Election law (Ballot act of 1891) is mandatory. *Curran* v. *Clayton, supra; Attorney General* v. *Glaser,* 102 Mich. 396; McCrary on Elections, (3d ed.) sec. 503.

The Ballot Reform act is a radical departure from former methods. *Whittam* v. *Zahorik,* 59 N. W. Rep. 57; *Curran* v. *Clayton, supra; Attorney General* v. *Glaser, supra; Kirk* v. *Rhodes,* 46 Cal. 399; *In re Vote-marks,* 17 R. I. 812.

If a mark other than a cross be used there is nothing to certify its meaning. *Attorney General* v. *Glaser, supra; In re Vote-marks,* 17 R. I. 812; *Whittam* v. *Zahorik, supra.*

A ballot with a straight mark or line in the party circle cannot be counted.  *Attorney General* v. *Glaser, supra; Curran* v. *Clayton, supra; Whittam* v. *Zahorik, supra.*

A ballot with a cross outside the square or circle should not be counted.  *Attorney General* v. *Glaser, supra; Whittam* v. *Zahorik, supra; Curran* v. *Clayton, supra.*

A ballot with a cipher in the circle or square, or a cross made with more than two intersecting straight lines, should not be counted.  *Whittam* v. *Zahorik, supra.*

While the intention of the voter is one of the first purposes of interpretation of ballots, yet the counting of the vote does not depend solely upon the power to ascertain and declare his choice, but also on the expression of that choice in the manner provided by statute.  *Whittam* v. *Zahorik, supra; Curran* v. *Clayton, supra.*

Although the choice of the voter may be apparent from his ballot, yet if not expressed in the manner provided by statute the ballot will not be counted.  *Whittam* v. *Zahorik, supra; Attorney General* v. *Glaser, supra.*

When a cross is placed in the circle, placing a cross in the square of a candidate on the same ticket adds nothing.  *State* v. *Hagen,* 60 N. W. Rep. 108.

A name written in must have a cross before it.  *State* v. *Hagen, supra;* 3 Starr & Curtis, sec. 23, chap. 46, p. 570.

The cards of instruction by the county clerk and the circular of instructions by the Secretary of State to voters are made by the statute official, and are binding on the voters until the court has put a construction on the law differing with them.  3 Starr & Curtis, secs. 33, 18, chap. 46; *Attorney General* v. *Glaser, supra.*

Any mark placed upon the ballot by the voter other than that provided by the statute, or any mark not necessary to the legal expression of his choice, should vitiate the ballot as a distinguishing mark, as such mark could be used for identification, and thereby violate the secrecy of the ballot and lead to the corruption of the voter. *Curran* v. *Clayton, supra; Whittam* v. *Zahorik, supra.*

J. C. McBride, and Taylor & Abrams, for appellee:

The courts, in order to give effect to the will of the majority and to prevent the disfranchising of legal voters, have held those provisions to be formal and directory, merely, which are not essential to a fair election, unless such provisions are declared to be essential by the statute itself. *State* v. *Russell*, 34 Neb. 116.

If, as in most cases, the statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual validity of the election. McCrary on Elections, sec. 190.

Paine, in his work on Elections, (sec. 498,) expresses the same views in the following language: "In general, those statutory provisions which fix the day and the place of elections and the qualification of the voters are substantial and mandatory, while those which relate to the mode of procedure in the election and to the record and return of the results are formal and directory."

The views expressed by these authors have the support of the great majority of cases in this country and England. The following are a few of the many cases in point: *Gass* v. *State*, 34 Ind. 425; *Piatt* v. *People*, 29 Ill. 54; *Barnès* v. *Supervisors*, 51 Miss. 305; *Tarbox* v. *Sughrue*, 36 Kan. 225; *Fry* v. *Booth*, 19 Ohio St. 25; *DeBerry* v. *Nicholson*, 102 N. C. 465.

Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end, and in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free from fraud and have not interfered with a full and fair expression of the voter's choice. *Bowers* v.

*Smith,* 111 Mo. 45; *Dale* v. *Irwin,* 78 Ill. 180; *Peard* v. *State,* 34 Neb. 372.

All statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor.   *Owens* v. *State,* 64 Tex. 509.

When the question is for what or for whom a ballot should be counted, the intention of the voter should, if possible, be ascertained, and when ascertained it must control.   *McKinnon* v. *People ex rel.* 110 Ill. 305; *People ex rel.* v. *Matteson,* 17 id. 167.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding begun in the court below by the appellant, to contest the election of appellee to the office of superintendent of schools for Christian county. It appears from the petition filed that at the November election, 1894, Robert W. Orr was the nominee of the democratic party, Nina S. White of the republican party and Eugene E. Chumley of the people's party; that by the canvass of the votes cast for these candidates, Orr received 3215, White 3195 and Chumley 489, whereupon a certificate of election was duly issued to Orr, who qualified and entered upon the duties of the office.   Other tickets on the ballot had no candidate for that office.

It is insisted by petitioner that Miss White was in fact legally elected.   The grounds of the contest are, that in each voting precinct of the county the judges failed to count a certain number of votes cast for either of the candidates, which should have been counted for White; that they counted for Orr votes which should have been counted for White, and counted votes for Orr not legally cast for him.   The answer denies these grounds, and avers that in each of the precincts votes were cast for Orr which should have been, but were not, counted for him; that votes cast for him were counted for White, and that votes were counted for White which were not legally cast for her.   On a re-count of the ballots the court found that White received 3168 votes and Orr 3160, to which no ob-

jection was made. There were counted to Chumley 488, and 75 by agreement rejected, as being votes for neither party, leaving 111 in dispute. Of these the court counted 35 to White, 44 to Orr and rejected the remaining 32 altogether, thus giving Orr a total of 3204 and White 3203, and declaring Orr duly elected by a majority of one vote.

It is contended by counsel for appellant, that under our statute only a cross can be used upon the ballots to indicate the voter's choice of candidates, which cross must be in the form indicated in the statute and placed in the circle or square, and unless the elector so marks his ballot it must be rejected. In other words, they insist that the language of section 23 of the Ballot law of this State, (3 Starr & Curtis, chap. 46, p. 570,) which says the voter "shall prepare his ballot by making in the appropriate margin or place a cross (X) opposite the name of the candidate of his choice for each office to be filled," etc., is mandatory, and must be strictly complied with, else the ballot is void. They also insist that every mark upon a ballot cast, not necessary to indicate the voter's choice of candidates, as indicated in said section 23, should be treated as a distinguishing mark, and render the whole ballot void. In support of these positions several decisions of the courts of other States are cited, but in view of the language of the statutes under which those cases were decided we do not regard them as in point here. For instance, the case of *Parvin* v. *Wimberg*, 130 Ind. 561, much relied upon by counsel for appellant, was decided upon a statute of that State, section 45 of which provides that in indicating the voter's choice of candidates a stamp shall be used, by stamping the square immediately preceding their names, and it was held the use of the stamp and the placing it in and upon the square were mandatory. Section 23 of our statute does not say with what the cross shall be made, neither does it mention squares or circles opposite the names of candidates, but requires the cross to be made "in the appro-

priate margin or place opposite the name," etc.   If the
desire is to vote for all the candidates of a party, the
cross is to be placed at the "appropriate place preceding
the appellation or title of such party," etc., nothing being
said about a circle.   It is true, that by construing section
14, prescribing the form of the ballot, with section 23, it
appears that by "appropriate margin or place" is meant
the circle or square on the ballot; but there is not, as in
the Indiana statute, a direct command that the cross shall
be made in a square or circle.   Neither does our statute,
as we construe it, prescribe the form of the cross to be
used.   It provides that it shall be "by making  *  *  *  a
cross (X) opposite the name," etc.   Manifestly, placing
the capital X in parentheses was merely to indicate to
the voter how the cross might be made, and it cannot be
seriously insisted that the statute commands the cross to
be so made.   That is to say, even if it were held that the
statute is mandatory, its requirements would be satisfied
by complying with the language, "by making a cross" in
either of three forms, viz., in the form of a capital X, as
indicated in the statute; in a form similar to a capital T,
or by crossing two lines thus, $+$.   (See Webster's Inter-
national Dictionary, defining "cross.")   There is therefore
a manifest difference in the requirement that a voter shall
use a stamp, furnished for that purpose, to indicate his
choice of candidates, and that he shall make a cross.
A failure to use the stamp is a positive violation of the
law; a failure to make a distinct, well-formed cross may
be the result of inability or inadvertence.   It would be
impracticable, therefore, to give effect to our statute con-
strued to be mandatory as to the form of the cross to be
made to indicate the voter's choice.

It has always been held in this State that if the in-
tention of the voter can be fairly ascertained from his
ballot, though not in strict conformity with law, effect
will be given to that intention,—in other words, that the
voter shall not be disfranchised or deprived of his right

to vote through mere inadvertence, mistake or ignorance, if an honest intention can be ascertained from his ballot. (See *McKinnon* v. *People ex rel.* 110 Ill. 305; *Behrensmeyer* v. *Kreitz*, 135 id. 591.) The ballot law of 1891 does not, in our opinion, change the rule in this regard, unless to give effect to such intention would tend to destroy the secrecy of the ballot. On the contrary, section 26 expressly provides: "If the voter marks more names than there are persons to be elected to an office, or if, for any reason, it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office,"—plainly meaning that if the voter's choice can be ascertained from his ballot it shall be counted, if it can be done consistently with other provisions and the object of the act. It was the intention of this amendment, as expressed in its title, to provide for the printing and distribution of ballots at public expense, for the nomination of candidates for public offices, to regulate the manner of holding elections and to enforce the secrecy of the ballot. "Wherever our statutes do not expressly declare that particular informalities do not avoid the ballot, it would seem best to consider their requirements as directory, only. The whole purpose of the ballot as an institution is to obtain a correct expression of intention, and if in a given case the intention is clear, it is an entire misconception of the purpose of the requirements to treat them as essentials,—that is, as objects in themselves, and not merely as means." (Wigmore on Australian Ballot System—2d ed.—p. 195.) To say that any mark on a ballot other than a cross in the proper place makes it void, is to go beyond the language of the statute and in direct conflict with section 26, *supra*.

The statute being directory, and not mandatory, as to the manner of voting prescribed in section 23, it remains to be determined what is its proper construction. In settling this question two objects must be kept in view, viz., the secrecy of the ballot, and the intention of

the voter.   It was evidently the intention of the legis-
lature to declare what should absolutely destroy a ballot
or prevent its being counted, by section 26, *supra:* "If the
voter marks more names than there are persons to be
elected to an office, or if, for any reason, it is impossible
to determine the voter's choice for any office to be filled,
his ballot shall not be counted for such office.   No ballot
without the official indorsement shall be allowed to be
deposited in the ballot box, and none but ballots pro-
vided in accordance with the provisions of this act shall
be counted."   Observing this mandatory language, if a
voter's intention can be gathered from his ballot, with-
out laying down a rule which may lead to a destruction
of its secrecy, that intention should be given effect.
Nothing is said in the act about distinguishing marks,
but if a mark or character is used which, though indicat-
ing an intention to vote a particular party ticket or for
certain candidates, at the same time serves the purpose
of indicating who voted it, thereby furnishing the means
to designing persons of evading the law as to secrecy,
the ballot should be rejected.   It logically follows that
the voter's intention must be manifested by a cross, sub-
stantially in the place designated, which the judges of
elections, or the court on a re-count, can see was an
honest attempt to follow the directions of the law.   For
instance, on one of the ballots cast at this election the
voter simply wrote at the head of the democratic ticket
the word "Democratic."   On others a single mark was
made across or through the circle or square.   On others
a circle within the circle or square was made, and on
still others irregular characters were so used.   On one
ballot crosses were made opposite the names of candi-
dates, but entirely outside of the squares.   In those there
was no attempt by the voter to indicate his choice by
making a cross in the appropriate place.   On another,
seemingly regular in other respects, the name "Martin
Lynch" is signed at the bottom.   These marks and names

may tend to show an intention on the part of the voter to vote tickets so marked, but they disregard the plain directions of the law, and furnish the means whereby the secrecy of the ballot could be destroyed. Therefore we think all such ballots were properly rejected by the court below. On the other hand, ballots appear in the record on which it is clear that the voter attempted to make a cross in the proper place to indicate his choice of candidates, but succeeded more or less imperfectly. It being clear, in such cases, that the intention was to conform to the statute, and not to distinguish the ballot, they were properly counted.

On one of the ballots, opposite the word "yes," on the proposed constitutional amendment submitted, the word "get," as read by counsel for appellant, was written in the square, opposing counsel insisting that the word was meant for "yes." It is insisted by counsel for appellant that this word, as used, is as much a distinguishing mark as is the name "Martin Lynch" to the ballot above referred to. We do not think so. The name signed to the ballot could serve but one purpose, viz., to indicate who voted the ballot; the word "yes" or "get" tended to indicate the voter's choice upon the proposition submitted; and that it served the further purpose of distinguishing the ballot, is, to say the least, a very remote conjecture.

On several of the ballots counted for either candidate, names of candidates were erased by drawing a pencil through them, and these, it is insisted, are invalid because of distinguishing marks. What we have already said referring to section 26 is a sufficient answer to this contention.

Applying the rules indicated to the ballots in this record, we find that of the thirty-two rejected all were properly excluded except eight, four of which should have been counted for each of these candidates. In these the voters made a well-defined cross in the democratic or republican circle at the head of the ticket, (four in each,)

but also made a cross in another circle opposite a party name on which there was no candidate for superintendent of schools. While such ballots could not be counted for candidates upon both tickets, because the voter in that case marked more names than there were persons to be elected to the office, that rule cannot apply to these candidates,—that is to say, where a voter made a cross in the republican circle and did the same in the independent republican circle, on which last named ticket there was no candidate for superintendent of schools, he did not mark more names than there were persons to be elected to that office, but expressed his choice for Miss White. And so where a voter made a cross in the democratic circle but did the same in the people's silver circle, on which there was no candidate for the office, the vote should have been counted for Orr.

Of the disputed votes counted for Orr, one was marked in the democratic circle with a character like this, and had no other marks upon it.* We are unable to discover in the mark any resemblance to a cross, or see wherein the voter attempted to make a cross of any kind, and therefore, under the rule laid down, the ballot should have been rejected.

It is earnestly insisted that another ballot counted for Orr, marked in the democratic circle in this way, should have been rejected. The marks were made with ink, and while it is somewhat blurred, and cannot be said to be a cross, strictly speaking, still we think it shows an attempt on the part of the voter to make such a mark, and was therefore properly counted. But if it were otherwise, the result which we reach upon the whole record would not be changed, because on one of those counted for Miss White the mark in the republican circle is like this: Certainly there is no more reason for saying that one of these characters was intended for

---

*The above characters are *fac similes* of the marks on the original ballots.

a cross than the other. We think they were both properly counted.

On three of the tickets counted for Miss White a cross was made in the republican circle, but on one of them the name "R. W. Orr" and on the other two "Robert W. Orr" was written under the name "Nina S. White," and a cross made in the square opposite, but extending somewhat below her name. It would seem that the voter, in each of these cases, intended to vote the republican ticket, except for Miss White, but to vote for Orr as against her. If the cross in the square opposite the name "White" had been made directly opposite that of Orr, the vote would, under the provisions of the statute and our recent decision in *Sanner* v. *Patton*, 155 Ill. 553, have been a regular vote for Orr. We are, however, of the opinion that it is, to say the least, uncertain from these ballots which of the candidates the voter intended to vote for, and therefore, under section 26, *supra*, they should not have been counted for either.

Our conclusion then is, that, in any view of the case presented, appellee was entitled to his certificate of election, having at least a majority of three votes. The judgment of the county court must therefore be affirmed.

It may properly be added that it is the duty of every voter, under this law, to ascertain and follow the provisions of the statute and the directions of the Secretary of State in his instructions sent out with the ballots, and that whenever, either through negligence or willfulness, he disregards that duty, he does so at the peril of losing his vote.                      *Judgment affirmed.*