## VINCENT H. PERKINS

*v.*

## STEPHEN A. BERTRAND.

*Opinion filed October 24, 1901.*

1. ELECTIONS—*ballots are best evidence if properly preserved.* Ballots are the best evidence of the result of an election if they have been preserved in the manner and by the officers prescribed in the statute, and have not been so exposed to the reach of unauthorized persons as to raise a probability of their having been tampered with.

2. SAME—*whether ballots were properly preserved is a question of fact.* Whether ballots have been properly preserved is a question of fact, to be determined from all the circumstances proven.

3. BALLOTS—*ballot bearing one initial of judge of an election is valid.* While the statute requiring the official endorsement of the initials of a judge of the election is mandatory, yet the endorsement of one initial is a sufficient compliance therewith.

4. SAME—*ballot bearing full name of judge may be counted.* A ballot properly prepared by a legal voter may be counted although the judge of election, without the knowledge or participation of the voter, has endorsed his full name thereon instead of his initials.

5. SAME—*effect where circles at the head of two tickets contain crosses.* Ballots containing crosses in the circles at the head of two tickets and also a cross in the square before the name of one or the other of the nominees for the contested office are properly counted for the nominee before whose name a cross is marked.

6. SAME—*a ballot is bad where other tickets are erased by lines drawn through them.* A ballot marked with a cross in the circle at the head of one ticket should not be counted where the other tickets are erased by drawing lines through them.

7. SAME—*whether ballot bears distinguishing marks is largely a question of fact.* Whether a ballot bears distinguishing marks is largely a question of fact, and the action of the trial court in counting ballots alleged to be so marked cannot be overruled, on appeal, where such ballots are not certified to the appellate tribunal for inspection.

8. SAME—*when ballots contained in "defective" envelope may be counted.* On contest, ballots found in an envelope containing "defective and objected to" ballots may be counted, where the judges of election in the precincts where they were cast testify that they were cast by legal voters and gave their reasons for not counting them, none of which were valid, and where the ballots themselves are official, bear the initials of the proper judge, are properly marked and were enclosed in sealed envelopes so marked as to disclose their contents.

9. SAME—*when appellant cannot complain of error in counting ballots.* Ballots not bearing any initials of the judge of election are improperly counted on contest, but the appellant cannot complain where the record does not disclose for whom they were counted nor that appellant made any objection thereto.

10. SAME—*ballots numbered by judges by misunderstanding may be counted.* Ballots numbered by the judges of election by reason of a misunderstanding, on their part, of the law and without knowledge of the voters, are properly counted if otherwise valid.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

CHARLES C. STILWELL, for appellant.

OSCAR HEBEL, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a proceeding begun in the county court of Cook county by appellee, to contest the election of appellant to the office of supervisor of the town of North Chicago. At the general election held April 3, 1900, in the town of North Chicago, for the election of town officers, the parties were opposing candidates for the office of supervisor of said town, their names appearing upon the official ballot as nominees of the republican and democratic parties, respectively. On April 7, 1900, the canvassing board of the city of Chicago canvassed the returns of said election, as provided for by law, and declared that the appellant had received 11,953 votes and the appellee 11,890 votes for said office, whereupon a certificate of election was issued to appellant. On May 2, 1900, appellee filed a statement in the county court of said county for the purpose of contesting the election of appellant. Issues were formed and the cause heard, and the court entered a decree finding that appellee had received 11,859 votes and appellant 11,823 votes, and that appellee was duly elected to said office, and the appellant has prosecuted this appeal.

The ballots cast at the election were opened and counted by the court, and the decree was based upon

such re-count, to which action of the court objection was made by the appellant on the ground that the ballots should not prevail over the returns of the judges of the election, for the reason that said ballots had not been properly identified and preserved.

In *Collier* v. *Anlicker*, 189 Ill. 34, we say (p. 37): "Two rules upon this subject have been laid down by the decisions of this court: First, the returns should not be accepted as conclusive if the judges of the election have been so careless in the performance of their duties as to cast discredit upon their returns. (*Catron* v. *Craw*, 164 Ill. 20; *Dooley* v. *VanHohenstein*, 170 id. 630; *Murphy* v. *Battle*, 155 id. 182; *Caldwell* v. *McElvain*, 184 id. 552.) Second, the ballots are considered the best evidence in determining the result of an election when it appears that they have been preserved in the manner and by the officers prescribed in the statute, and have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with.—*Catron* v. *Craw, supra; Caldwell* v. *McElvain, supra; Beall* v. *Albert*, 159 Ill. 127; *Bonney* v. *Finch*, 180 id. 133." And in *Kreider* v. *McFerson*, 189 Ill. 605, it is held that whether the ballots have been properly preserved is a question of fact, to be determined from all the circumstances proved.

The evidence shows that the boxes containing the ballots cast at said election were returned, properly sealed, on the evening of the third or the morning of the fourth of April, 1900, by the judges of election, to the board of election commissioners of the city of Chicago; that they were carefully guarded by the employees of the board of election commissioners until they were placed in the vault in room 316, on the third floor in the city hall in the city of Chicago, under the direction of said commissioners; that they were not tampered with, and the seals on each and all of said boxes were undisturbed when placed in said vault; that afterwards the vault was

closed; that the inside door was sealed by Stevens, Hudson and Moriarty, clerks in the board of election commissioners' office, each of them using an individual seal; that the outer door of said vault was locked by a combination lock and sealed by Isaac N. Powell, chief clerk of the board of election commissioners; that Isaac N. Powell was the only person having the combination of the lock of said vault; that said vault was not again opened until Sunday, the 29th day of April, 1900; that before said vault was opened on said day, Stevens, Hudson, Moriarty and Powell each examined their individual seals on the outer and inner vault doors and found them intact and undisturbed; that on that day the vault was opened and the boxes containing said ballots were taken from the vault by the clerks of said board of election commissioners, placed in baskets and loaded on trucks, put on an elevator, and removed to and stored in another vault located on the fourth floor of said building; that during the removal thereof from the vault on the third to the vault on the fourth floor of said building the seals on said boxes were not disturbed or the ballots tampered with or handled; that the time consumed in the removal of said ballots from the vault on the third floor to the vault on the fourth floor was not to exceed four hours; that after they were placed in the vault on the fourth floor the inner door of said vault was closed and sealed by Stevens, Hudson and Moriarty, each using an individual seal; that the outer door of said vault was locked by Isaac N. Powell with a combination lock, and that said Isaac N. Powell was the only person having the combination of the lock to said vault; that said vault contained only ballots cast at said election, and each time before the same was opened thereafter, Stevens, Hudson and Moriarty examined their individual seals and in all cases found them intact and undisturbed, and that said vault was only opened by said Isaac N. Powell and in the presence of Stevens, Hudson and Moriarty;

that said vault was guarded at night by a watchman employed by said board of election commissioners, and that said boxes containing the ballots cast at said election were never removed from said vault from the 29th day of April, 1900, when they were placed therein on the fourth floor of said building, until they were produced by said Isaac N. Powell to be counted in this contest, with the exception of the boxes containing the ballots from the first, second, third, fourth, fifth, sixth, seventh, eighth, thirteenth, fourteenth and fifteenth precincts of the twentieth ward; that there was an election contest pending in the city council of the city of Chicago for the office of alderman of the twentieth ward in said city between William J. Danforth and William Eisfeldt; that said Danforth filed a petition with the city council of the city of Chicago setting forth that he and Eisfeldt were candidates for the office of alderman for the twentieth ward at the election held on April 3, 1900; that their respective names as candidates appeared upon the official ballot; that there were irregularities at said election, and charging that he was elected alderman of said ward instead of Eisfeldt. Said contest was referred to the committee on elections by the said city council; that on the 4th day of June an order was passed by said city council ordering that the board of election commissioners of the city of Chicago be requested to produce before a sub-committee of said city council the ballots cast in said precincts of said ward at the election of April 3, 1900, to be used by said committee as evidence in said contest; that said order was presented to the board of election commissioners on the 16th day of June, 1900; that on the 9th day of June, 1900, a sub-committee of the city council of the city of Chicago, consisting of three aldermen, appeared at the office of the election commissioners; that in pursuance of the order of said council of the city of Chicago the clerk of said board of election commissioners produced the boxes containing the ballots

cast at the election on April 3, 1900, in said precincts of said ward, to be used by said sub-committee as evidence in said contest; that the boxes containing said ballots were opened by Isaac N. Powell, the chief clerk of said board, in the presence of said election commissioners, said sub-committee, the contestants and their attorneys, and the ballots counted; that immediately after such re-count they were returned to the respective boxes from which they had been taken, re-sealed and again placed in said vault; that during such re-count said ballots were not mutilated, disfigured or in any manner changed, but were returned to said boxes in the same condition in which they were taken therefrom, and after their return thereto remained in said vault, with the other boxes containing ballots, until they were produced in court to be re-counted in this contest.

The ballots were fully identified and properly and safely kept and not exposed to the risk of being tampered with, and the court did not err in holding that they were better evidence, in determining the result of the election, than the returns of the judges of the election, and in basing its decision upon such re-count and not upon the returns of the judges of the election.

The questions raised in the court below and discussed in the briefs filed in this court are numerous, cross-errors having been assigned. The ballots objected to, however, with few exceptions, which are not sufficiently numerous to affect the result, may be classified and the questions raised disposed of under the following heads:

*First*—A number of ballots were counted which had endorsed upon the back thereof only a single initial of one of the judges of election. The object of requiring one of the judges of election to officially endorse on the back of the ballot his initials before giving it to the voter is to identify the ballot as being one which had been cast at the election. Such identification is as complete from one initial as from all of the initials of such judge, and

the voter should not be disfranchised by reason of the failure of such judge of election to literally comply with the statute in that regard. While the statute requiring such official endorsement is mandatory, (*Kelly* v. *Adams*, 183 Ill. 193,) the endorsement of one initial is a substantial compliance with the statute, which is all that is required; also, under a well known canon of construction in force in this State, (3 Starr & Cur. Stat. 1896, chap. 131, sec. 1, par. 3,) words importing the plural number include the singular. The court did not err in counting such votes. In *Horning* v. *Board of Canvassers of Saginaw County*, 119 Mich. 51, under the provisions of the election laws of that State requiring the inspector to write his initials upon the upper left-hand corner of the ballot and declaring void all ballots not endorsed with the initials of the inspector, as provided in the act, it was held ballots inadvertently endorsed by the inspector in the lower right-hand corner should be counted. To the same effect is *Parvin* v. *Wimberg*, 130 Ind. 561; 30 Am. St. Rep. 254.

*Second*—A number of ballots were counted which had endorsed upon the back thereof the full name of the judge of election, instead of his initials. In *Gill* v. *Shurtleff*, 183 Ill. 440, it was held that where a legal voter properly prepares his ballot and the same is placed in the ballot box it should be counted, although some one of the election officers, without participation of the voter, made an endorsement on such ballot which might serve as a distinguishing mark. Under the rule as thus announced such votes were properly counted.

*Third*—A number of ballots were counted with a cross in the republican and democratic circles and a cross in the square preceding "Bertrand" or "Perkins." In the case of *Vallier* v. *Brakke*, 7 S. Dak. 343, a well considered case construing the Australian Ballot act of that State, which is substantially the same as the act in force in this State, the court held that a ballot marked with a circle at the head of both the republican and people's

party tickets and a cross at the left of the name of the plaintiff was correctly counted for the plaintiff, on the ground that the cross at the head of the two tickets neutralized each other and was equivalent to a cross at the head of neither, and that the cross to the left of the plaintiff's name made it a vote for the plaintiff. Under this authority, which seems to be the only one directly in point, the court properly counted ballots thus marked for the candidate before whose name the cross appeared in the square.

*Fourth*—The court declined to count ballots marked in the circle at the head of the republican or democratic tickets in cases where the voter had erased the other tickets upon the ballot by drawing vertical lines through the same. This ruling was correct. In *Kelly* v. *Adams*, *supra*, where the *fac simile* of a similar ballot is printed, the court held that such ballot was improperly counted, on the ground that such lines amounted to distinguishing marks, and avoided the ballot.

*Fifth*—The court counted a number of ballots upon the face of which appeared letters, words or marks made by the voter, which were claimed to be distinguishing marks. The original ballots have not been certified to us for inspection, and the trial court, from an inspection thereof, was in much better position to determine the question, which is largely, if not wholly, a question of fact, (*Kelso* v. *Wright*, 110 Iowa, 560,) whether said letters, characters and marks were distinguishing marks or whether they simply evidenced the honest intention of the voter to indicate the candidate or candidates for whom he desired to cast his ballot, than we are from a description of such ballots or from the exhibits found in the record. We are not, therefore, inclined to overrule the action of the trial court in counting said ballots. In *Parker* v. *Orr*, 158 Ill. 609, it was contended that the word "yes" or "get" upon a ballot amounted to a distinguishing mark and that the trial court erred in counting the same.

In disposing of such contention we say (p. 618): "The word 'yes' or 'get' tended to indicate the voter's choice upon the proposition submitted; and that it served the further purpose of distinguishing the ballot, is, to say the least, a very remote conjecture."

*Sixth*—The court counted a number of ballots found in the envelopes containing "defective and objected to" ballots. Before counting the same the judges of the precincts from which the ballots came were called and testified that the ballots were voted by legal voters, and gave their reasons for not counting the same, none of which appear to be valid. Said ballots were official, had the initials of one of the judges of the respective precincts on the back thereof, were properly marked by the voter, and were enclosed in envelopes securely sealed and so marked and endorsed as to disclose their contents, as provided by section 26 of the Ballot act. The court did not err in counting such ballots.

*Seventh*—The court counted a number of ballots which, it is contended, should not have been counted because not properly marked, of which the following are examples: "Ballot with no marks on its face except two in the circle at the head of the democratic ticket; two pen-marks meeting at a point. The court thinks, on close examination, these two pen-marks cross. Counted for Perkins." "Ballot with a cross in the circle at the head of the republican ticket. There are two pen-marks that look like blots, one immediately to the left in the first square and the other one over the square before the names Bertrand and Weil and partially over Schmidling. The court thinks they were made by accident. Counted for Bertrand." The trial court saw the original ballots and in some instances examined them with a magnifying glass, and was in a much better position to judge than we whether or not the same were properly marked by the voter. It is therefore impossible for us to say they were not properly marked and entitled to be counted.

*Eighth*—Appellant objects to the counting of ten ballots that did not have the initials of any judge of election on the back thereof. Under the authority of *Kelly* v. *Adams, supra,* such ballots were not entitled to be counted. The record in this case, however, does not disclose for whom they were counted, nor that at the time they were counted appellant objected to the count thereof. It is now too late for him to make such objection. For aught that appears they were all counted for the appellant.

*Ninth*—Ballots were counted which had figures thereon, placed thereon by the judges at the time they were cast, under a mistaken view of the law and without the knowledge of the voter, of which the following are examples: "Ballot marked for Perkins has on back figure '3,' counted for Perkins." "Ballot marked for Bertrand has on back, in lead pencil, figure '13,' counted for Bertrand." In *Pennington* v. *Hare,* 60 Minn. 146, where ballots had been numbered, without the knowledge of the electors casting them, by the judges of election, by reason of a misunderstanding of the law on their part, the ballots were held to be properly counted for their respective parties, the court say (p. 147): "To hold otherwise would place it in the power of election officers to disfranchise electors at their pleasure." Such votes were properly counted.

We have examined each question presented by this record with care, and while it is impossible to comment in this opinion upon each of the numerous ballots to which objections have been made, we have carefully considered the same, and have reached the conclusion that the county court properly held the ballots to be the best evidence from which to determine the result of said election, and that said court committed no reversible error in the re-counting of said ballots.

The decree of the county court will therefore be affirmed.                                        *Decree affirmed.*