WILLIAM E. KERR, Appellee, *vs.* ELMER N. FLEWELLING, Appellant.

*Opinion filed June 18, 1908—Rehearing denied October 7, 1908.*

1. CONSTITUTIONAL LAW—*constitution does not prohibit giving circuit courts original jurisdiction of election contests.* Section 12 of article 6 of the constitution, providing that circuit courts shall have original jurisdiction in all causes in law and equity, is not a limitation upon the power of the legislature to give such courts original jurisdiction in special statutory proceedings, such as an election contest, which are not cases at law or in equity. (*Canby v. Hartzell,* 167 Ill. 628, distinguished.)

2. SAME—*provision of Election law giving circuit courts jurisdiction of mayoralty election contests is valid.* Section 97 of the Election law, which gives to circuit courts and the superior court of Cook county jurisdiction to hear and determine contests of the election of mayors of cities, is not in violation of section 12 of article 6 of the constitution.

3. ELECTIONS—*it is not essential that the cross be regular in shape or made of single lines.* The fact that the crosses marked upon ballots are irregular in shape or consist of double lines, or more than two lines, does not require rejection of the ballots, where there is no indication of any attempt to distinguish the ballots by identification marks.

4. SAME—*blackening of a square does not take the place of a cross.* A ballot upon which the square before the name of the defendant to a petition to contest an election is blackened with a lead pencil, with the evident intention of erasing some previous mark made by the voter, cannot be counted.

5. SAME—*not every mark on a ballot other than a cross is a distinguishing mark.* While a voter endangers the secrecy of his ballot by putting any mark thereon other than a cross or crosses in the proper place, as provided by the law, yet not every such mark is a distinguishing mark, and the question whether it is a distinguishing mark or not must be determined from an examination of the ballot, having in mind the general rules heretofore laid down by the Supreme Court.

6. SAME—*ballot having some tickets erased by diagonal lines is invalid.* A ballot having proper crosses in the squares before the names of the candidates on a certain ticket and having one or more of the other tickets canceled by diagonal pencil lines in the form of an X is invalid and should not be counted.

7. SAME—*when ballot should not be counted.* A ballot having a cross in the square before the name of the defendant to a petition

to contest an election, a cross in the square before the name of a candidate for another office on another ticket, the rest of which is erased by horizontal lines through the names of the candidates and the other tickets stricken out by diagonal pencil lines, should not be counted.

8. SAME—*erasure of names by horizontal pencil marks does not constitute a distinguishing mark.* The erasure of names of candidates by horizontal pencil marks drawn through them does not constitute a distinguishing mark, and the ballot should be counted as to the candidates for whom it is properly marked.

9. SAME—*when ballot should be counted for contestant.* A ballot having a proper cross in the square before the name of the contestant in an election contest is properly counted, although in the circle at the head of the ticket a cross, apparently, has been made and erased by pencil marks.

10. SAME—*intersection of lines of cross must be within square or circle.* The intersection of the lines constituting the cross in a square or circle must be within the square or circle, but it is no objection that the lines are long and heavy.

11. SAME—*what are not distinguishing marks.* A hole in the ballot, made by an attempt to erase a mark with something wet, is not a distinguishing mark; nor are tally-marks made at the paper house before the ballots were printed; nor are figures on the back of the ballot which were made by the judges in counting the ballots.

12. SAME—*written word on ballot may not be a distinguishing mark.* The word "rejected," written on the name of a candidate by the voter after marking a cross in the square before the candidate's name and then erasing the name by a pencil line, is not necessarily a distinguishing mark.

13. SAME—*mutilated ballot cannot be counted.* A ballot upon which part of the circle and squares on one ticket does not appear, the ballot having evidently been improperly fed to the press, is mutilated and cannot be counted.

14. SAME—*mere erasure of marks does not constitute a distinguishing mark.* Ballots having proper crosses in the square before the name of one party to an election contest are properly counted for such party though crosses or marks have been made in other squares and erased.

15. SAME—*ballot having the crosses on the names of the candidates is properly rejected.* A ballot having the crosses made on the names of the candidates instead of in the squares before the names is properly rejected on contest.

CARTWRIGHT, C. J., dissenting; FARMER and DUNN, JJ., specially concurring.

APPEAL from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

FREDERIC R. DEYOUNG, and I. T. GREENACRE, for appellant.

ROBERT S. ILES, and THOMAS C. STOBBS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The city of Harvey is organized under the general City and Village act. April 16, 1907, a city election was held in that city. The ballot voted contained six tickets, appellee being a candidate for mayor on the republican citizen ticket and appellant a candidate for the same office on the anti-machine ticket. On the returns being canvassed by the city council it was found that 473 votes had been cast for appellee and 475 votes for appellant, each receiving a higher number of votes than any of the other candidates for said office. Appellant was thereupon declared elected to the office of mayor by a plurality of two votes. A petition to contest his election was filed by the appellee in the superior court of Cook county. On the hearing before that court and a re-count of the ballots it was found that appellee was entitled to 470 votes and appellant to 469 votes. A decree was accordingly entered declaring the appellee elected by a plurality of one vote. Appellant thereupon appealed to this court. By his assignment of errors he questions the jurisdiction of the superior court over the subject matter of the proceeding, and also the decision of that court as to certain disputed ballots. Appellee has assigned cross-errors questioning the decision of the court as to certain ballots.

Did the superior court err in denying appellant's motion to dismiss the petition for want of jurisdiction over the subject matter? Section 12 of article 6 of the constitution of 1870 provides that circuit courts shall have original jurisdiction of all cases in law and equity and such appellate

jurisdiction as is or may be provided by law. The superior
court of Cook county is of the same class, and has the same
jurisdiction, under the constitution, as the circuit courts.
(*Berkowicz* v. *Lester*, 121 Ill. 99.)    Appellant contends
that section 97 of the act in regard to elections, which pur-
ports to give to the circuit courts in the respective counties
and to the superior court of Cook county jurisdiction to
hear and determine contests of elections of mayors of cities,
is contrary to the provisions of said section 12 of the con-
stitution.    An election contest has been held by this court
not to be a cause in law or equity, but a special judicial
proceeding created by statute. *Douglas* v. *Hutchinson*, 183
Ill. 323; *Brueggemann* v. *Young*, 208 id. 181.

Appellant contends that the constitutional provision cre-
ated and prescribed the extent of the judicial power of cir-
cuit courts; that the original jurisdiction was irrevocably
fixed and determined as extending only to cases in law and
equity; that no other original jurisdiction can be conferred
upon such courts by the legislature, and that all other juris-
diction must be appellate, and not original.    In the case of
*Canby* v. *Hartzell*, 167 Ill. 628, we denied to the legislature
power, under the constitution, to confer upon this court
original jurisdiction of a contest for the office of judge of
a circuit court.    That decision was based upon the provi-
sion of the constitution that this court shall have original
jurisdiction in cases relating to revenue, *mandamus* and
*habeas corpus* and appellate jurisdiction in all other cases.
The original jurisdiction of this court is limited to the three
classes of cases mentioned, by the provision that the jurisdic-
tion in all other cases shall be appellate.    There is no such
specific limitation in the provision respecting circuit courts,
but the language used there manifests rather an intention
to give to such courts original jurisdiction, of which they
cannot be deprived.    The language of the constitution does
not imply a limitation upon the power of the legislature to
confer other jurisdiction upon such courts, whether origi-

nal or appellate in its nature. The court did not err in denying the motion to dismiss the proceeding for want of jurisdiction.

The ballots concerning which there were disputes as to counting in the superior court have been certified to this court and marked as exhibits by letters from A to R, inclusive, and numerals from 1 to 33, inclusive. Most, if not all, of the objections made to the ballots are based upon the ground that they were not properly marked or that they have certain distinguishing marks. We think it will aid in the disposition of these ballots if we discuss briefly what is a "distinguishing mark."

Nothing is said in the Australian Ballot law about distinguishing marks, but this court, in *Parker* v. *Orr,* 158 Ill. 609, said (p. 617): "If a mark or character is used which, though indicating an intention to vote a particular party ticket or for certain candidates, at the same time serves the purpose of indicating who voted it, thereby furnishing the means to designing persons of evading the law as to secrecy, the ballot should be rejected. It logically follows that the voter's intention must be manifested by a cross, substantially in the place designated, which the judges of elections, or the court on a re-count, can see was an honest attempt to follow the directions of the law." This decision was one of the first in this State to discuss the Australian Ballot law as to the marking of the ballot, and it was there stated that said law did not change the rule that if the intention of the voter can be fairly ascertained from his ballot, even though not in strict conformity with the law, effect will be given to that intention; that the voter shall not be disfranchised or deprived of his right to vote through mere inadvertence, mistake or ignorance, if an honest intention can be ascertained from his ballot, unless to give effect to such intention would tend to destroy the secrecy of the ballot. In that decision attention was called to the manner of making a cross, and it was held that a perfect cross was not re-

quired, as was the case under the law of Indiana, where it was required that the voter use a stamp. The doctrine laid down in that case on these points has always been followed by this court. *Page* v. *Kuykendall*, 161 Ill. 319; *Schuler* v. *Hogan*, 168 id. 369; *Kelly* v. *Adams*, 183 id. 193; *Perkins* v. *Bertrand*, 192 id. 58; *Tandy* v. *Lavery*, 194 id. 372.

In discussing the secrecy of the ballot and distinguishing marks it was said in *Pierce* v. *People*, 197 Ill. 432, on page 436: "The distinguishing mark prohibited by the statute is such a mark as will separate and distinguish the particular ballot from the other ballots cast at the election. It is some sort of mark put upon the ballot to indicate who cast it and to furnish the means of evading the law as to secrecy."

In *Rexroth* v. *Schein*, 206 Ill. 80, after quoting with approval from *Pierce* v. *People, supra,* we said (p. 100): "Not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in the declaration that the ballot is invalid. If it appears from the face of the ballot that such marks or writings were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of candidates among those to be voted for at the election, and that the voter did not thereby intend or attempt to indicate who voted the ballot, the ballot should not be rejected as to candidates for whom there is thereon a choice expressed in compliance with the requirements of the statute.".

In *Smith* v. *Reid,* 223 Ill. 493, we said (p. 495): "One of the chief objects of the Australian Ballot law is to preserve the secrecy of the ballot, and in order to effect this, ballots having marks made by the voter which are clearly distinguishing and destroy their secrecy will be thrown out." Again, in *Winn* v. *Blackman,* 229 Ill. 198, in considering this same question, we said (p. 212): "Whether a given mark upon a ballot is or is not a distinguishing

mark, within the meaning of the Australian Ballot law, is largely, if not wholly, a question of fact. (*Kelso* v. *Wright,* 110 Iowa, 560; *Perkins* v. *Bertrand,* 192 Ill. 58.) This question must be determined from an inspection of the original ballot itself."

Almost any mark made with a lead pencil or pen, whether a cross, an irregular or a straight line, can be so put upon a ballot as to be recognized by the voter himself. Indeed, a mark might be used intentionally as a distinguishing mark when there was nothing on the ballot that so indicated to one not informed of its purpose. The object of our present Election law is to obtain a correct expression of the intention of the voters without having the manner in which any particular voter has cast his vote known to anyone save himself, with the necessary exception of the election officials, who may assist certain voters according to law. From the standpoint of public policy it might be urged that the law should require the cross to be made by a stamp, and that the act should have been so drawn that any mark on the ballot other than a cross in the proper place would be a distinguishing mark; but, as our law now stands, to say that any mark on the ballot other than a cross in the proper place necessarily makes it void is to go beyond the language of the statute and is in direct conflict with certain provisions found therein. (*Parker* v. *Orr, supra.*) The voter, however, endangers the secrecy of his ballot by placing thereon any mark or writing other than a cross or crosses in the manner provided by law. Whether any other mark or writing is a distinguishing mark must be determined from an examination of the ballot, having in mind the general rules heretofore laid down by this court.

We will now take up and discuss the ballots that counsel for either party have insisted should be counted in a different manner than counted by the trial court.

Counsel do not object to the manner in which the trial court counted a number of ballots, although they have been

certified here as exhibits and mentioned in the briefs. Some of these exhibits, it is true, they submit to the court for inspection. If counsel cannot see why these ballots were improperly counted, it is placing a needless burden on this court to certify them here for our examination.

Ballots 31 and 32 were not counted by the trial court, and both parties agree that this was proper.

Ballots A, B, H, I, 17, 18, 19 and 20 were counted by the court for appellant. No objection is urged by appellee to these ballots.

Ballots C, D, F, G, K, 3, 4, 16 and 21 were counted by the trial court for appellee. No objection is pointed out in the briefs as to them.

The only objection raised to ballots 24, 25, 26 and 27, which were counted for appellee, is that the crosses were irregular in shape. It is not claimed that they are distinguishing marks. We think these ballots were properly counted for appellee.

It is contended that ballots 1, 2, 5, 6 and 15, which were counted for appellee, should not have been counted because the arm of the cross, in each instance, consisted of two or more lines, or that the cross is so drawn as to be a distinguishing mark. On each of these ballots there is a cross in the circle at the head of the ticket on which appellee's name was printed or in the square before his name. We cannot see that there is the slightest objection to the cross on any of these ballots, except that some of the crosses do not consist of single lines. In our opinion there is no indication of an attempt to distinguish the ballots by any mark of identification. They were properly counted for appellee.

The only objection raised by appellant to ballot 7 is that the name of the candidate for city attorney on the republican citizen ticket was erased by horizontal lines drawn through it. There was a cross in the square before the name of each candidate on this ticket except city attorney, and there was a cross in the square before the name of the

candidate for city attorney on another ticket. While these marks should not have been made on the ballot by the voter, under the authority of *Parker* v. *Orr, supra,* and *Winn* v. *Blackman, supra,* these pencil erasures cannot be held to be distinguishing marks, and the ballot was properly counted for appellee. Ballots 8 and 14 are similarly marked, and for the reasons just given were properly counted for appellee.

Ballot 12 was counted for appellee, and properly so. The only objection urged by appellant is, that the lines of the cross were long and heavy and extend outside of the circle at the head of the ticket. We see nothing in the marks to indicate that they were made for the purpose of calling the attention of some other person to the ballot, thus destroying its secrecy. It would be difficult, on principle, as suggested by appellee, to distinguish the markings on this ballot from those on ballots 17 and 18. In both these last named ballots the crosses are long and heavy and extend outside of the square. We have already held that said last named ballots were properly counted for appellant.

As to ballot 13, we are inclined to think that the intersection of the lines constituting the cross is outside of the square, and therefore should not have been counted for appellee, as was done by the court below. *Smith* v. *Reid, supra.*

Ballot 22 was not counted. There are crosses in each of the squares before the names of the candidates on the republican citizen ticket except for alderman. There is also a cross in the square before the name of the candidate for city attorney on the citizen ticket. The name of the candidate for city attorney on the republican citizen ticket and that of the candidate for the same office on the citizen ticket are each erased by a single horizontal line and the word "rejected" written immediately above each name. The ballot shows plainly that it was the intention of the voter to cast his vote for appellee, and that after making the crosses in the squares for two candidates for city attorney he found

he had voted for too many candidates for that office, and therefore erased the names of both candidates and wrote the word "rejected" to make his intention plain. We see no reason to suppose that the voter resorted to this method to distinguish his ballot and destroy its secrecy. This ballot should have been counted for appellee. *Parker* v. *Orr, supra; Perkins* v. *Bertrand, supra.*

Ballot 23 has a regular cross in the square before the name of appellee and also in one other square on appellee's ticket and a cross in the square before the name of a candidate on another ticket. It is contended that this ballot should not be counted, because in the circle at the head of the republican citizen column a cross, apparently, has been made and erased by pencil marks. We think it is clear that this erasure was not made as a distinguishing mark, and the court did right in counting it for appellee.

Ballot 33 was not counted. It has a cross in the square before the name of appellee, and a broad, heavy, irregular pencil mark extending longitudinally across the face of the ballot. These heavy marks were not made by the same pencil with which the mark was made by the voter. The crosses in the square were very light and made with a hard pencil, while the irregular line referred to was made with a large, soft pencil or crayon, such as is frequently used for marking packages. The evidence shows that the characters constitute a tally-mark made at the paper house before the ballots were delivered to the city clerk, and were intended for "1 M," signifying one ream, or some other number of sheets. The appearance of the ballot corroborates this evidence, and as the marks do not appear to have been made by the voter, the ballot should have been counted for appellee.

Ballot E has a cross in the circle at the head of the republican citizen ticket, on which appellee was a candidate for mayor. It is insisted that this ballot was improperly counted by the court because the circle at the head of this ticket is apparently a double one. Counsel for appellant, in

their brief, attempt to argue that the heavy circle was made as a distinguishing mark. The printed circles at the head of all the tickets on this ballot are apparently the same as at the head of the republican citizen ticket. Moreover, an examination of the exhibits shows that the circles on a number of other tickets are exactly like the one objected to here, notably ballots A and B, which have been counted for appellant without objection. It is very apparent that the double or heavy circle objected to here was not made by the voter, but was caused by imperfect machinery or poor work in printing the ballots. This ballot was properly counted for appellee.

The court counted ballot J for appellee. It is contended that it should not have been so counted because the voter made several crosses on the ballot, and the others were more regular in form than the one in the square before the name of appellee. We do not think there is anything in this argument. There is nothing on the ballot to indicate in any way that the voter attempted to make a distinguishing mark. It was properly counted.

The trial court did not count ballot M. It is properly marked with a cross in the square before the name of appellee. The only objection is that it has a hole in the paper before the name of appellant, which the court held to be a distinguishing mark. An inspection of the ballot shows that the voter made some kind of a mark in the square before the name of the appellant and then tried to erase it, and having moistened the paper rubbed a hole through it. Clearly the hole is not a distinguishing mark but was an attempt to make an erasure. The ballot should have been counted for appellee.

Ballot N has a cross in the circle at the head of the republican citizen ticket. The names of the candidates for city attorney and alderman on that ticket are both erased by horizontal lines. There is also a cross in the square before the names of candidates for city attorney and alderman on

another ticket. By the same line of reasoning heretofore used with reference to ballot 7, the erasures of these two names in the manner indicated did not amount to distinguishing marks, and the ballot was properly counted for the appellee.

This disposes of all appellee's ballots about which there is any question. We will now take up and discuss appellant's ballots about which there is some contention.

Ballot L was not counted for either party. The voter appears to have put some kind of a mark in the square before appellant's name and then to have erased it by blackening the whole square with lead pencil circles, with the evident purpose of erasing or covering up the previous cross or mark. The voter placed crosses on various tickets before the names of candidates for other offices and also a cross in the square before a blank space for mayor on the citizen ticket, but did not write in any name in this blank space. We think it is plain that he started to make some mark in the square before the name of appellant and then changed his mind as to which candidate for mayor he wished to vote for, and erased the cross with the pencil circle. The court did not err in refusing to count this ballot.

Ballots O, P and Q were properly counted for appellant. They were regular in every respect but have figures on the back in the form of notations, which were evidently made by the judges in counting the ballots. When a voter has complied with the law in marking his ballot he should not be disfranchised by such marks made by the judges. *Gill* v. *Shurtleff,* 183 Ill. 440; *Perkins* v. *Bertrand, supra.*

The court did right in rejecting ballot R, for the reason that there were no crosses in any of the squares or circles, the crosses being made on the names of the candidates. *Apple* v. *Barcroft,* 158 Ill. 649; *Parker* v. *Orr, supra.*

Ballot 9 was not counted. Every square in the anti-machine ticket, including that before appellant's name, has a correct and proper cross in it. Each of the other tickets

235 — 22

is canceled or erased by two diagonal, penciled lines in the form of an X, by which the voter crossed out the names of all the candidates on all the other tickets. These erasures are claimed to be distinguishing marks. In *Perkins* v. *Bertrand, supra,* this court, in discussing similar erasures, held (p. 65) such ballots should not be counted, citing *Kelly* v. *Adams,* 183 Ill. 193. In the *Kelly case* the mark upon the rejected ballot, a *fac simile* of which was shown in the opinion, was of such character that it might have been used as a means of distinguishing the ballot to other parties than the voter himself. It might be alleged that these simple, straight lines erasing all the tickets except the one intended to be voted, drawn in the shape of a cross, were not used for the purpose of distinguishing marks. Against this position the argument might be urged that a voter who departs so far from the spirit and letter of the Australian Ballot law as to erase all other tickets on the ballot, to the number of five, except the one that he voted himself, was in reality voting a spoiled or mutilated ballot, and that it should no more be counted than a ballot by which the voter had attempted to show his choice by making a cross in the appropriate circle at the head of the ticket he wished to vote and then tearing all the other tickets off the ballot. Whatever reasons may be urged for or against the counting of this ballot if the question were one of first impression, the court is of the opinion that having held in *Perkins* v. *Bertrand, supra,* that such ballots should not be counted that ruling should be adhered to. Better results in enforcing the Australian Ballot law will be obtained by adhering to any fair and reasonable rule as to distinguishing marks than by changing such rules frequently. For this reason we think the trial court properly refused to count ballot 9.

Ballot 10 has a cross in the square before the name of the appellant and a cross in the square before the name of the candidate for alderman on the republican citizen ticket. The rest of the republican citizen ticket is erased by hori-

zontal lines drawn through the names of the candidates on that ticket. All the names on the anti-machine ticket except that of appellant, and all of the names on the tickets other than the two just named, have been erased by straight lines drawn through them diagonally, in the shape of a large cross. We can see no way to distinguish this ballot from ballot 9, just discussed, and for the reasons there stated we are constrained to hold that the court ruled correctly in refusing to count ballot 10 for appellant.

Ballot 11 was not counted. It has a regular cross in the circle at the head of the anti-machine ticket and also a cross in a square before appellant's name on that ticket, and the whole of the republican citizen ticket is crossed out by two straight lines drawn in the form of a cross, diagonally through said ticket. On the republican citizen ticket there is a cross in the square before the name of the candidate for city treasurer. The other four tickets on the ballot are unmarked in any way. It is somewhat difficult, on the one hand, to distinguish this ballot from ballots 9 and 10, which we have refused to count for appellant, and, on the other hand, to distinguish it from ballots 7, 8, 14 and N, which we have counted for appellee. We think, however, that this ballot comes nearer in character to ballots 9 and 10 than to 7, 8, 14 and N. Ballots 9 and 10 we refused to count, following the holding of *Perkins* v. *Bertrand, supra,* that such ballots should not be counted. We counted ballots 7, 8, 14 and N, following *Parker* v. *Orr, supra.* We see no sufficient reason for changing the rules laid down in these decisions. The ruling of the trial court was correct as to this ballot.

Ballot 28 was counted for appellant. While there is a proper cross in the square before the name of appellant on the anti-machine ticket, the ballot is not in the form required by law. Evidently, in printing, the paper was not properly fed into the press, and parts of the circle and squares on the left-hand ticket,—that is, the republican citi-

zen,—do not appear on the ballot. The ballot is mutilated and should not have been counted. The judges should not have handed this ballot to the voter, and when they did, he should have asked them for one printed as the law required.

Ballot 29 has a cross in the square before the name of appellant and erasures of marks in other squares on the ballot, including one before the name of the candidate for mayor on the independent citizen ticket. We do not think these erasures were intended for distinguishing marks. It was properly counted for appellant.

Ballot 30 was properly counted for appellant. It has a cross in the square before the name of appellant on the anti-machine ticket, and the voter made a cross in the square for the candidate for mayor on the socialist ticket and attempted to erase it by rubbing it out. We think the voter's intention was plain, and that there was no attempt to make distinguishing marks on the ballot.

We have now discussed all of the disputed ballots, with the result that appellee gains three votes and loses one, leaving him a net gain of two over the re-count, and his total vote is thus placed at 472 votes. Appellant loses one and gains none, which makes his total 468. While the question as to counting or not counting certain of these ballots is close, it is impossible to follow consistent rules and reach a result that does not give appellee a larger vote than appellant.

The decree of the superior court is therefore affirmed.

*Decree affirmed.*

FARMER and DUNN, JJ., specially concurring:

We concur in the foregoing opinion, except that we think ballot No. 22 should not be counted.

Mr. CHIEF JUSTICE CARTWRIGHT, dissenting:

The same result would be reached in this case upon any theory as to the law concerning distinguishing marks, and I therefore concur in the conclusion that the decree should

be affirmed, but I regard it as inconsistent to hold that erasures of names by horizontal lines do not constitute distinguishing marks, while erasures by marks in the form of an ✕, with no peculiarity whatever in such marks, are distinguishing in character and warrant the rejection of the ballot. In my opinion neither mark serves to distinguish the particular ballot.