ROBERT M. KELLY v. STATE, EX REL. ABRAHAM KIERSKEY.

1 ELECTIONS. *Quo warranto. Illegal votes. Evidence. Amendment. Pleadings.*

In an action of *quo warranto*, to decide which of two persons received a majority of the legal votes cast at an election, defendant, after the close of the plaintiff's evidence, is entitled to amend his pleadings and offer evidence to show that votes were cast for the relator by persons who were not qualified electors.

2. SAME. *Election officers. Fraud.*

In a contested election suit a plea averring that certain votes were cast for the relator, by persons who were not qualified electors, is not demurrable because it fails to charge fraud on the election officers, nor can it be held bad on the assumption that it cannot be legally shown how such persons voted.

3. SAME. *Ballots. Voter's choice. How indicated. Code 1892, § 3664. Two crosses (xx).*

Under code 1892, § 3664, providing that the name of the person voted for on a ballot shall be marked with a cross (x), the use of two crosses (xx) to designate the name of the person voted for does not invalidate the ballot.

4. SAME. *Straight mark. Name erased.*

Under said statute ballots on which the voter's choice is sought to be indicated by a straight mark opposite a name, or by erasing a name, should not be counted; the statute intends a (x) only to indicate the choice of the voter.

5. SAME. *Public office. Code 1892, § 3540. Municipal offices.*

A municipal office is a public one within the meaning of code 1892, § 3540, providing for the trial in vacation of *quo warranto* proceedings involving the right to any public office.

6. SAME. *Special judge. Code 1892, §§ 921, 922. Jurisdiction.*

Under code 1892, § 922, providing that when a judge of any district is disqualified to act in any matter in vacation, such matter should be heard by the judge of another district, a *quo warranto* proceed-

ing cannot be heard by a special judge, under an appointment by the governor. Code 1892, § 921, providing for the appointment of special judges has no application; a trial before a special judge in vacation is *coram non judice*, and the want of jurisdiction may be raised in the supreme court for the first time.

FROM the circuit court of Warren county, trial in vacation. HON. R. H. THOMPSON, Special Judge.

The state, on the relation of Kierskey, appellee, was the plaintiff, and Kelly, appellant, was defendant in the court below. On December 4, 1900, an election was held in Vicksburg for the purpose of choosing city officials to serve for four years from the second Monday of January, 1901, as provided by the city charter. Among other offices to be filled was that of city assessor and tax collector, and for this office there were two candidates, Kierskey, the relator in this proceeding, and Kelly, the defendant. The latter was declared by the election commissioners to have received a majority of the votes over his opponent, was given the certificate of election, and took possession of the office. This *quo warranto* proceeding was instituted against him in the circuit court. The circuit judge of the district being disqualified to try the case, a commission was issued to R. H. Thompson, Esq., as special judge, and on March 7 the cause was announced ready for trial, the summons having been returnable by virtue of an order of the court to January 16, a day in vacation, and the cause continued from that time. Defendant filed a motion to quash the summons on the ground that the cause was not triable in vacation, which motion was overruled by the court. Defendant then filed a plea to the jurisdiction, setting up that the March criminal term of the court was then in session, and that the court was without jurisdiction to hear the cause at that time. A motion to strike out this plea was sustained, and defendant demurred to a certain part of the information, and filed a plea setting up certain new matters; whereupon relator filed a replication and an amended replication, averring that certain

persons therein named, not qualified voters, were permitted to vote for defendant, and that their votes should not be counted. To these replications the defendant demurred, on the ground, among others, that no fraud was charged on the part of the election managers or the defendant, or of the so-called disqualified voters, and because there was in the nature of the case, no way in which it could be legally shown how such persons voted; this demurrer was sustained. By consent a jury was waived, and the cause was tried before the court, and the relator introduced in evidence the ballot boxes and their contents, over defendant's objection, and asked the court to order a recount of the ballots contained in the several boxes, which order was made by the court and the ballots counted. A number of votes were found that were marked with a straight mark opposite the name of a candidate, and a number were found where the names of a candidate were scratched out. All of these were rejected by the court. There were others with two cross marks opposite the name of a candidate, and still others with a cross mark before and after a candidate's name. These the court allowed to be counted. The count made by the court showed that relator was elected by two votes. After all the evidence for relator had been introduced, defendant offered to amend his answer or plea to show that at said election one Bowman and one Martin, both of whom voted for relator, were not residents of the city, but resided outside the city, and that one Olivar was a duly registered voter of the city, but on the day of the election was in Chicago, and that one Gillian falsely and fraudulently represented the said Olivar, although he was not himself a qualified voter, and his name was not on the poll book; that said Gillian voted for relator, and defendant offered to introduce evidence to prove the allegations of his amended plea. The court declined to allow said amendment to be filed or said testimony to be introduced. After all the evidence on both sides had been introduced, it was adjudged by the court that relator had been elected to the

office by a majority of two votes. From this judgment defendant appeals.

*Catchings & Catchings, Murray F. Smith, John Brunini, L. W. Magruder*, and *W. J. Voller*, for appellant.

*R. L. McLaurin, J. F. Thames, Henry & Scudder*, and *Alexander & Alexander*, for appellee.

Argued orally by *O. W. Catchings* and *Murray F. Smith*, for appellant, and by *C. H. Alexander*, for appellee.

TERRAL, J., delivered the opinion of the court.

If, under the laws of this state, the object of the contest here made is to determine whether the relator or the defendant received a majority of the legal votes cast for the office of assessor and tax collector of the city of Vicksburg, we think the decision made by the court below must be reversed; for the record distinctly discloses that the defendant below offered to allege and show that three certain votes, to wit, those of Bowman, Gillian, and Martin, cast and counted for the relator, were illegal—illegal because two of said persons did not, at the time of the election, reside within the limits of the city of Vicksburg, and one of them was not a qualified voter, but falsely personated a qualified voter—and the allegation and proof thus offered to be made was disallowed by the court. Section 241 of the constitution requires, as we construe it, that a voter be a resident, at the time of the election, of the municipality where he votes, and also requires that he be duly registered; and, if this construction be correct, Bowman and Martin were not legal voters of the city of Vicksburg, because they resided without the city limits, and Gillian's vote was illegal because he was not registered as a voter. If any special allegation of the illegality of these three votes more than that contained in the record was necessary, the defendant offered to

amend his replication, and plead this matter, and the record recites this offer was denied to him, because "the allegations were not sufficient in law." The court found that relator was elected by two votes, and if the defendant had shown, as he offered to show, that three of the votes counted for the relator were illegal, then, as we understand the matter, the defendant would have been shown to be elected by one vote. If the court is trying the question who has received a majority of the legal votes for assessor and tax collector, we fail to perceive any deficiency in the allegation. If Bowman and Martin lived without the city limits at the time of the election, and Gillian on that day, not being himself registered, falsely personated a registered voter, who was absent from the city, and so severally voted for the relator; then such votes were clearly illegal, and could not have been made anything more than illegal by all the fraud and wrong of any and all other persons whomsoever. We think the allegations offered to be made were sufficient, and we think the defendant should have been permitted to amend his pleading so as to aver the matter proposed to be proven, and that he should have been permitted to make the proof offered. If we understand the suggestion in the argument to be that the allegations offered to be made and proven were insufficient, because they contained no charge of fraud in the managers of the election, we think such contention cannot be supported. Fraud and willful wrong on the part of the officers of the election would make the matter more shameful, but the votes being illegal, whether known to the officers to be so or not, the election should be purged of the wrong that right may prevail. It does not now concern us in what manner the defendant shall make the proof of the matters proposed. Of course, it should be by competent proof, but the character of the proof is not raised on this record.

2. We think the court ruled correctly in holding that the choice of a voter can be made only by a cross opposite the

name of the person intended to be voted for, and that the use of two crosses instead of one does not invalidate the vote.

3. The statute manifestly intends a cross, and a cross only, to be the sign of expressing the choice of the voter; and we think there was no error in excluding from the count ballots on which the voters attempted to express their choice by scratching the name of the person voted against, or by making a straight mark, perpendicular or horizontal, opposite the name he intended to vote for.

4. We are of the opinion that the office of assessor and tax collector of the city of Vicksburg is a public office, within the meaning of § 3540, Ann. Code 1892. That it is a "public office," in the general sense of that term, is admitted; but it is said that the words "public office," as used in § 3520, are used in contrast with the words "any office in any corporation," as used in the same section, and show an intent to make a distinction between a public office and an office in a corporation, and so exclude a city office from being a public office, as meant in § 3540. The expression of the legislature in the section quoted seems to be unhappy, but we incline to the view that as a city assessor and tax collector is in fact a public office, and as the proceeding by information in the nature of a *quo warranto* is in the name of the state, there is no reason perceived by us why it is not such a public office as may, under § 3540, be tried in vacation. Section 3540 provides how a trial in vacation may be obtained, and it specifically provides that the judge in the trial of such case shall have all the powers of a circuit court, shall be attended by the clerk and sheriff, may order a jury, and may try and dispose of the case, as if presiding in a circuit court, and the judgment and the proceedings shall be as if rendered by the circuit court. It is deducible, we think, from these provisions, that the regular judge of the circuit court, trying in vacation an information in the nature of a *quo warranto* for a public office, would, in effect, be sitting as a circuit court, and would have all the

powers of such court, with the incidental powers belonging thereto, and that, if the case had been tried by the regular judge of the court, the notes of the evidence taken by the stenographer might have been written out in longhand and presented to the judge, within sixty days after the trial, or within such other time as the circuit judge should allow.

Whether a special judge, under the statute relating to his appointment as such, would be properly commissioned by the governor to try a *quo warranto* in vacation, is a question of great difficulty, and upon consideration of which we make a pause. The statute relating to the appointment and commissioning by the governor of a special judge in any case are of recent origin in this state, and seem to be not framed to meet every phase of the subject, and are probably not what the legislature would have adopted if it had had greater experience in the matter. Section 922, code 1892, which provides that, when a judge of the district is qualified to act in any matter in vacation to be done in his district, such matter shall be brought before and acted on by the judge of another district, in like manner and with the same effect as if done by the judge of the district to which the matter pertains, seems to provide for a contingency like the one here presented; and, if so, it excludes the idea of the appointment of a special judge, to hold, in effect, a special term of the circuit court, not fixed and bounded by the statute, but opened and continued at his sole discretion. It is desirable that the legislative intention be more explicit; for, in our judgment, too much is left to presumption to hold that such authority is given under our present statutes. Such a construction we think would be overstrained, and not warranted by any fair and reasonable implication. It results, therefore, that the trial before the special judge was *coram non judice.*

*Reversed and remanded.*