## HOLDINGS WITH REFERENCE TO BALLOTS IMPROPERLY MARKED.

[Common Pleas Court of Highland County.]

### JAMES A. WILLIAMS v. WILLIAM S. BARKER.

Decided, January, 1907.

*Infirmary Director—Contested Election of—How Appeal is Perfected Under Section 2997—Parol Evidence as to Ballots not Counted—Folding and Marking the Ticket—Markings which Might Identify the Ballot Render it Void—Irregular Marking Which does not Render the Ballot Void.*

1. In an action to contest an election where the election officers are *functus officio*, the fact that none of the ballots in dispute were counted by the election officers may be established by parol evidence.

2. A ballot is not voted until it is deposited in the ballot box, and hence when a ballot was not deposited in the box because improperly folded, it can not be counted.

3. A ballot which contains a cross in the circle over the Democratic ticket, but is irregular in that it contains a cross before the names of both the Democratic and Republican candidates for judge, should be counted for the Democratic candidates on the ticket other than judge.

4. A ballot that is irregular in that it contains a cross in the circles over both the Democratic and Socialistic tickets, should be counted for the Democratic candidates on the county ticket, where there are no candidates for county offices on the Socialistic ticket.

5. A ballot with a straight mark or a circle within one of the circles over the several tickets does not indicate an honest desire on the part of the voter to comply with the statute in designating the ticket he desires to vote, and such a ballot should be rejected; but where the mark in the circle at the head of a ticket shows only such an irregularity as might result from an awkward use of the pencil, the ballot should be counted.

6. Where all the tickets on a ballot except one are marked off with long cross-marks extending from the top of the ticket to the bottom, and there is no cross in the circle over the ticket which is not thus erased and no crosses opposite the names of the candidates on that ticket, the ballot should be rejected for failure on the part of the voter to exhibit any intention to comply with the statute in the marking of his ballot.

7. A mutilated ballot should be rejected, for the reason that it would afford a sure means of identifying the ballot, and there is a provision for supplying a voter with a second ballot if the first is spoiled in the marking.

8. In a contested election case, where the term of office has begun before the case is brought to trial, a finding in favor of the contestant should be accompanied by a judgment of ouster and of induction of the contestant into office.

BIGGER, J.

This is a special proceeding under Sections 2997, *et seq.* of Revised Statutes to contest the right of the defendant to the office of infirmary director of Highland county, he having been declared duly elected to that office by the board of deputy state supervisors of elections of Highland county, on the 14th day of November, 1906..

The statute does not provide for any pleadings in such cases, the only requirement being that the contestor shall file a notice of his appeal from the decision of the board with the clerk of the court of common pleas, and give notice thereof in writing to the contestee, which was done in this case. This notice of appeal is in the form of a petition addressed to the court, which states that the relator is an elector of Highland county, and was such at the time of the election on November 6, 1906, and was a candidate and voted for at said election for the office of infirmary director, to which office the contestee was declared to be elected and gives notice that he will contest the election of the said William S. Barker upon the following grounds:

First. That in certain townships in said county at least six votes were legally cast for the said Williams for said office of infirmary director which were not counted for him, but were sealed up and sent to the board of deputy state supervisors of elections of said county who now have them in their possession. Then follows a statement of the townships and the votes claimed to have been cast in each for the relator.

Second. The relator states that the board of deputy state supervisors of elections of Highland county found and declared that the said James A. Williams and William A. Barker at said election each received 3,087 votes, but did not include and count in the vote for said James A. Williams the six votes so as aforesaid cast for him.

Third. The relator further states that the said James A. Williams received at said election a majority of all the lawful votes cast for said office of infirmary director and was and is the duly elected infirmary director of said Highland county.

The relator prays that the finding and declaration of the board of deputy supervisors of elections of Highland county may be reviewed and inquired into and set aside and held for naught, and that the said James A. Williams may be declared to be duly elected to said office, and that the court make such order and decree and award such process as may be proper and necessary in the premises.

The contest is over the validity of these disputed ballots which were sealed up by the election officers in accordance with the statutory rquirement and returned to the board of deputy state supervisors of elections. There is some informality and want of compliance with the statute on the part of the election officers in making the return of these ballots, but it is stipulated and agreed between the parties to this contest, that if it is competent to prove this fact by parol evidence, that none of these disputed ballots in question were counted at the election. The election officers are now *functus officio*. That being true that such fact may be established by parol evidence is, I think, established by the authorities. *Phelps* v. *Schroder,* 26 O. S., 549; *State* v. *Conser,* 14 C. D., 270; *Sinks* v. *Reese,* 19 O. S., 306; Wigmore on Evidence, Section 1351.

These disputed ballots are eleven in number, marked for identification as Exhibits A, B, C, D, F, G, I, J, K, M and O. Exhibit J is marked in the circle at the head of the Socialist Labor ticket, and as there are no other marks upon the ballot, it can not be counted for either the contestant or contestee and may, therefore, be passed without further notice.

I notice next the ballot marked Exhibit O. The stub still remains upon this ballot and the evidence shows that it was never deposited in the ballot box. As to this ballot, the evidence is substantially this: The voter, James Morgan, whose name appears upon the stub, was an inmate of the county infirmary, and presented himself at the polling place and obtained a ballot from the election officers. He retired to a voting booth and returned

therefrom with the ballot folded so as to conceal the fac-simile of the signatures of the election board, and with the printed ballot on the outside. He was directed to return to the booth and properly fold his ballot. He re-entered the booth and again returned and presented the ballot improperly folded. The evidence is not very clear as to the number of times he returned to the booths on direction of the election officers, but apparently three times at least. The undisputed evidence is that the last time he presented his ballot to the judge, he was informed that it was not properly folded, and that he thereupon threw it toward the judge saying that he did not have time—one of the judges testifying that he also said he could not fold it right, and went out of the polling place. The witness, Van Zant, one of the judges, testifies that the ballot was properly folded the last time except that the stub was folded in with the ticket with a small corner of the same projecting.

Upon this evidence, I am of opinion this ballot can not be counted. It was the duty of the voter when directed to properly fold his ballot. The stub being folded in with the ticket, would require some one to open the folded ticket to detach the same, and this the election officers had no right to do. But beyond all that the voter did not dispute the statement of the judge that his ballot was improperly folded, but apparently recognizing that fact, desisted from the attempt to vote, saying that he did not have time, and when he returned the ballot to the election officers he did only that which the law required of him in case he did not vote the ballot. Section 2966-37, Revised Statutes.

The voter did not ask the assistance of the election officers in marking his ballot, and the evidence does not show that he was entitled to such assistance. The evidence tends to show he was a man of low mentality, but it is only physical infirmities rendering the elector unable to mark his ballot that entitles him to have the assistance of the election officers under the statute. He marked his ballot but did not properly fold it, and returned it to the election officers without having voted. His statement that he did not have time, and that he could not fold it right shows that he desisted from the attempt to vote.

Furthermore, Section 22 of the act as amended at the last session of the Legislature, provides: "When any person shall

have received an official ballot from one of the election officers and shall have delivered the same to the election officer, having charge of the ballot box at the time, and when such ballot has been deposited in the ballot box, such person shall be deemed to have voted.'' I conclude, therefore, that this ballot can not be counted.

I next consider the ballots marked B and G, as in my opinion their validity depends upon the same considerations. The ballot marked B contains a cross in the circle at the head of the Democratic ticket, and also a cross at the left and opposite the name of Oliver Newton Sams, the Democratic candidate for common pleas judge, and also at the left of and opposite the name of Cyrus Newby, the Republican candidate for common pleas judge. There are no other marks upon the ballot.

The ballot marked G for identification, contains a cross-mark in the circle at the head of the Democratic ticket and also a cross-mark in the circle at the head of the Socialist ticket. These are the only marks upon the ticket. Upon the Socialist ticket there is a full list of candidates for state offices and a candidate for Congress, but no candidates for county offices.

In my opinion these two ballots must be counted for the contestant. Our statute provides Section 2966-35, that ''If the elector mark more names than there are persons to be elected to an office * * * his ballot shall not be counted for such office.'' In the ballot marked B the elector voted for more names than there were persons to be elected for the office of common pleas judge. In the ballot marked G, the voter voted for more names than there were persons to be elected for each state office and for Representative in Congress. The cross in the circle was a vote for every candidate appearing on that ticket. But the statute in such case provides that such ballot shall only be rejected as to that office, and this plainly evidences the intention of the Legislature that as to other offices on the ticket it shall be counted. This exact question does not seem to have been decided in this state so far as appears from the reports, but the exact question was decided by the Supreme Court of California under a statute containing the same provision. The California statute provides: ''If the voter marks more names than there are persons to be elected to an office, his

ballot shall not be counted for such office." It will be observed that the language is identical except that the Ohio statute uses the word "elector" where the California statute uses the word "voter."

In the case of *Day* v. *Dunning*, 127 California, 55, the court decided that—

"Ballots cast for an excessive number of names for one office have only the effect under Section 1211 of the political code to prevent the ballots from being counted for that office, and such excessive number of votes for one office, does not constitute an identifying mark within the meaning of Section 1215 of the same code, and does not destroy the validity of the ballot or effect it in so far as properly cast for candidates for other offices.

"The fact that the vote for an excessive number of names for one office might be used as an identifying mark does not affect the validity of the ballot in respect to other offices, such identifying marks being relieved from the operation of Section 1215 of the political code by virtue of the more specific provision of Section 1211 of that code, which is a limitation upon Section 1215."

The California statute, Section 1215, provides "No voter shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him." In the opinion in the above case it is said:

"Section 1211 by all rules of construction is susceptible of but a single meaning. It means that the ballot must be rejected as to the particular office where more than the number of names allowed by law are voted for that office, and that it must be counted as to all other names for all other offices. This is as plain as though it were declared in direct and positive language. The statute means this or it means nothing."

To the same effect is the decision of the Supreme Court of Indiana, in the case of *Borden* v. *Williams*, 155 Indiana, 36, and of the Supreme Court of Illinois, in the case of *Parker* v. *Orr*, 158 Ill., 609. In the case of *Caldwell* v. *McElvain*, 184 Ill., it was decided that—

"Where two only of the five tickets printed upon the ballot have a candidate for a certain office, a ballot marked with a

cross in the circle at the head of each of such two tickets can not be counted for either candidate. But where the crosses marked are in the circle at the head of one of the tickets having a candidate for such office, and one or more which have not, the ballot may be counted for such candidate.''

The voter not having voted for more than one name for the office of infirmary director on either of these ballots, and that name being that of the contestant, James A. Williams, I find that these two ballots should be counted for him.

There are two ballots marked Exhibits C and I, which are marked in the same manner, viz., with a straight mark in the circle at the head of the ticket, the ballot marked for identification C having the straight mark in the circle at the head of the Democratic ticket, and the ballot marked I, having the straight mark in the circle at the head of the Republican ticket. In so far as the result of this contest is concerned, it is immaterial whether these two ballots be counted or not, as one is cast for the contestant and the other for the contestee. Their validity depends upon the construction to be given to our statute. The statute provides that the ''elector shall observe the following rules in marking his ballot.'' Then follow the specific directions for marking a ballot, the requirement being that a cross shall in all cases be used to indicate the voter's intention. Manifestly it was the object and purpose of this requirement that all voters should be required to make the same kind of a mark upon the ballot so as to carry out the purpose and object of securing a secret ballot and to prevent bribery and intimidation. If it is optional with the voter to use some other kind of a mark than a cross-mark, then he may use any mark whatever, so that it be placed in the proper position, and it is manifest that to permit this latitude would result in practice in defeating the primary object of the Australian Ballot Law, which is to secure a secret ballot. It is true our statute contains the provision that no ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice. But clearly this must be construed with the other provisions of the law and construed in the light of the controlling object and purpose of the Australian Ballot Law. If the intent of the voter alone

is to be the guiding star, then what is there to prevent a voter from writing on his ballot "I desire to vote for every name on the Republican ticket" or "the Democratic ticket." Such a system would clearly defeat the very object and purpose of the law. Is such a mark as this to be regarded as a technical error which is to be disregarded if the intent of the voter can be arrived at? I do not find any reported case in this state involving this question, but it has been before the courts of other states under provisions substantially like our own statute. I find that the Australian Ballot Laws in all the states, so far as I have examined them, contain a provision substantially like our own, that effect is to be given to the intention of the voter where it is possible to arrive at it. The statute of Minnesota provides: "In the counting of ballots cast at any election, all ballots shall be counted for the persons for whom they were intended so far as such intention can be clearly ascertained from the ballot itself." In the case of *Truelsen* v. *Hugo,* 81 Minn., 73, the Supreme Court of that state decided that "The intention of the voter under our election law must control in counting his ballot; but such intention must be shown and indicated by markings on the official ballot substantially in the manner provided by such law and in *bona fide* attempt at compliance therewith."

In the opinion the court said:

"While the statute is careful in requiring effect to be given the intent of the voter, all the provisions on the subject are pregnant with the idea that such intent must be expressed and indicated by a compliance with the manner and method therein provided for marking the ballots."

The court further said:

"If the intent of the voter is to control regardless of the manner of indicating it, then there need be no attempt to comply with the requirements of the statute at all. Such is contrary to the purpose and intent of the law and we adopt the view that the intent of the voter to be effective must be indicated and expressed substantially in the manner as provided by statute, or at least in a *bona fide* attempt at compliance therewith."

In the case of *Parker* v. *Orr, supra,* the Supreme Court of Illinois decided—

"An honest attempt to follow the directions of the law requiring a cross to be made in the proper margin or place opposite the name on the ballot, must appear in order to permit the ballot to be counted. Writing the word "Democratic" at the head of the ticket, making a single mark through the circle or square, making a circular or other irregular character (not being the form of a cross) within the circle or square, making a cross opposite the names, but outside the square, and signing the name of the voter to the ballot are all modes of marking which disregard the directions of the law, besides destroying the ballot's secrecy and ballots so marked should be rejected."

In a case reported in 7th S. D., 343, it was decided by the Supreme Court of that state that—

"A straight or diagonal line at the left of the name of a candidate does not constitute a cross and should be diregarded. One or more circles within the circle at the head of a party ticket do not constitute a cross within the circle and should be disregarded."

In the opinion the court says:

"The cross is the distinguishing mark in our Australian Ballot System, and we think it would be going too far to hold that a circle could be substituted for the cross prescribed by the statute. It may have been the intention of the voter to substitute a circle for the cross, but the law permits no such substitution. If the voter desired to have his vote counted, he must substantially comply with the law."

In the case of *Kelly* v. *The State*, 79 Miss., 168, it was decidtd that—

"Under code of 1892, Section 3664, providing that the name of the person voted for on a ballot, shall be marked with a cross, the use of two crosses to designate the name of the person voted for does not invalidate the ballot. Under said statute, ballots on which the voter's choice is sought to be indicated by a straight mark opposite the name or by erasing a name should not be counted. The statute intends a cross only to indicate the choice of the voter."

The authorities seem to be practically in accord on the proposition that the elector must use a cross to indicate his intention, or at least it must be apparent that he was honestly endeavoring to make the mark which is prescribed by the statute as the

proper mark to indicate his intention. If we depart from this statutory requirement and hold that some other mark will answer as well, it is difficult if not impossible to prescribe any limits to such departure from the statute. I am therefore compelled to reach the conclusion that these two ballots should not be counted.

The same reasons, it is apparent, will exclude the ballot marked for identification Exhibit D, and which is marked with a circle within the circle at the head of the Republican ticket. This ballot must for the same reasons be rejected.

I next come to the consideration of the ballot marked for identification Exhibit K, which is marked in the circle at the head of the Democratic ticket, and contains no other marks. This mark is something more than a cross. It is composed of three straight marks in one direction and two straight marks at right angles therewith and crossing the three marks. I have reached the conclusion that this ballot must be counted. There is here a .cross, but the voter has for some reason repeated the operation. The intention of the voter here is plain, and as he has apparently tried to follow out the statutory requirement with reference to voting a straight ticket, the ballot should be counted as a straight Democratic ballot.

There is no reported case in this state in which this question has been before the courts for decision, but there are a number in other states and the clear weight of authority in such case is that such the ballot must be counted. It is to be remembered that many voters are unused to the use of a pencil and are awkward in its use, that the light is often times dim in the voting booth and that the vision of many voters is poor, so that to require great exactness or nicety in the making of the cross would result in disfranchising honest voters.

In the case of *Parker* v. *Orr, supra,* the Supreme Court of Illinois held that—

"Imperfect success in making the cross in the proper place to indicate a choice of candidates where there was a clear intention to conform to the statute and not to distinguish the ballot will not require its rejection."

In· this case there was more than a cross, there being two marks in one direction and one mark crossing them, and it was held the ballot should be counted.

In the case of *Houston* v. *Steel*, 98 Ky., 596, it was decided:

"Ballots marked with two or more crosses in one square, or with a cross of a peculiar form, should be counted if otherwise regular as these are not such distinguishing marks as invalidate the ballot in the absence of evidence of intent to distinguish it." In that case there was one ballot marked with three crosses in the circle, which was regarded apparently as only three attempts to make a cross."

In *People* v. *Kamps*, 129 Mich., it was decided that—

"Election ballots which appeared as though the voter had first made a cross in the circle and thinking he had not marked it plainly enough, repeated the marking, substantially over the first, and others which appeared as though the cross might have been made with a pencil, the lead of which was so broken that it had two points on it, or on which the voter may have made a cross with a down and up stroke in making each mark, were properly counted."

The court in the opinion said that "If these ballots were to be rejected, the ballots of many voters who do not use pen or pencil very often would have to be rejected." To the same effect are the following cases: *People, ex rel Bantel*, v. *Morgan*, 20th N. Y. App. Div., 48; *State, ex rel Orr*, v. *Fawcett*, 17th Wash., 188; *Kelly* v. *State*, 79 Miss., 159; *Tandey* v. *Lavery*, 194 Ill., 372.

This ballot being marked in the cross at the head of the Democratic ticket must be counted for the contestant.

This leaves for consideration the ballots marked for identification, Exhibits A, M and F. As to these three ballots I am in doubt. It is immaterial what the decision be, however, as to their validity, as it can not affect the result, even if the one which is claimed for the contestee be counted, Exhibit M, the other two, if counted at all, being Democratic ballots. I am clearly convinced that Exhibits B, G and K must be counted for the contestee under the provisions of our statute and the decisions above cited. I also feel clear that the Exhibits C, D, I and O can not be counted for the reasons stated, which would give to

the contestee a majority of three votes which can not be affected by the decision as to these three ballots.

Exhibit A contains a cross-mark in the circle at the head of the Democratic ticket, and a cross-mark at the left and in front of the blank space on the Socialist ticket, marked for county commissioner, there being no candidates for county offices on the Socialist ticket. This ballot, to my mind, has all the ear marks of a fraudulent ballot marked for identification. I have much doubt as to whether or not this is a technical error which is to be disregarded under the terms of the statute. The intention may be clear, but it is equally true this ticket is so marked as to readily identify it from other ballots which defeats the object and purpose of the Australian Ballot.

The Supreme Court of Illinois, in the case of *Parker* v. *Orr, supra,* decided that: ''The use of a mark furnishing means of avoiding the secrecy of a ballot requires its rejection, though the law contains no direct prohibition of distinguishing marks, and this is so even though. the mark used may indicate the voter's candidate or party choice.'' The statute of Illinois, like our own, contains a provision that where it is impossible to determine the voter's choice, the ballot shall be rejected. For these reasons I think this ballot should be rejected.

As to the ballot marked O, all of the tickets upon the ballot, except the Republican ticket, are marked off with a long cross-mark extending practically from the top to the bottom of the tickets, but no mark of any kind is placed upon the Republican ticket, either in the circle or at the left and before the names of the several candidates thereon.

The Supreme Court of Minnesota, *Truelsen* v. *Hugo,* 81 Minn., 73, decided that under the Australian Ballot Law such a ballot could not be counted. It was held in that case that—

''The intention of the voter under our election law must control in counting his ballot. But such intention must be shown and indicated by markings on the official ballot substantially in the manner provided by such law and in *bona fide* attempt at compliance therewith.''

The court says on page 78—

''Exhibit 34 was properly rejected. There was no attempt at a compliance with the statute on the subject of marking and it

could not properly have been counted. The only marks on this ballot are those erasing the name of contestee, the name of the Socialist Labor candidate, and the names of the Republican and Socialist candidates for Aldermen, leaving the Democratic candidates alone on the ballot, but without any attempt to place a mark of any kind opposite their names.''

I therefore reject this ballot as not being a compliance with the law and not indicating the intention of the voter to vote the Republican ticket, he having neither marked his ballot nor attempted to mark it, as required by the statute.

As to the remaining ballot, it is mutilated by an attempted erasure of names on it. This is also rejected. The statute provides for issuing additional ballots in case the voter spoils his ballot and such a marking would be a sure means of identifying the ballot from others.

The result arrived at, therefore, gives to the contestant three votes, which gives him a total vote of 3,090, as against 3,087 for the contestee. I therefore conclude upon the evidence and the law that the contestant received a majority of the legal votes cast for this office and was and is duly elected to the office of infirmary director of Highland county, and such is the judgment of the court.

Furthermore, as under the law the term begins on the first Monday of January, which would be the 7th day of January, and as the Supreme Court has held that this remedy is exclusive and that quo warranto can not be maintained, I am of opinion a judgment of ouster should be entered and of induction of the contestant into the office. The costs under the statute are assessed against the contestee, including the cost of the depositions. Exceptions may be noted by either party.

*Steele & Sams*, for plaintiff.

*Geo. L. Garrett* and *D. Q. Morrow*, for defendant.