T. W. BRENTS, Appellant, vs. J. R. SMITH, Appellee.

*Opinion filed June 20, 1911.*

1. ELECTIONS—*contestant may, by amendment, add new points to his petition.* An election contest, under the present statute, is to all intents and purposes a chancery proceeding, and it is proper for the court, after the answer is filed, to allow the contestant to amend his petition by adding new points of contest.

2. SAME—*when candidates on other tickets need not be made parties.* In a contest between the republican and democratic candidates for a county office, candidates for the office on other tickets are not necessary parties if it appears from the petition and answer that their rights cannot be affected by a re-count.

3. SAME—*marks on ballots made by judges in counting them do not destroy the force of ballots.* Judges and clerks of election should not place marks upon the face or back of the ballots when counting them, but the fact that they do so does not destroy the force of the ballots as marked by the voters.

4. SAME—*mark similar in form to the capital letter "T" is a cross.* Where the mark in the circle or square is similar in form to the capital letter "T," there is a sufficient intersection of the lines to regard the mark as a cross.

5. SAME—*fact that crosses are dim is not ground for rejecting ballots.* The fact that the crosses on certain ballots are dim, having the appearance of being made by pressing the pencil very lightly on the paper or using a pencil in which the lead was broken, is not ground for rejecting the ballots.

6. SAME—*mark resembling the letter "O" cannot be treated as a cross.* A ballot having a mark in the circle at the head of one ticket resembling the letter "O" cannot be counted as a vote for the candidates on that ticket.

7. SAME—*a pencil line through name of candidate strikes him off.* Where a pencil line is drawn horizontally through the names of the candidates for sheriff on two tickets the ballot cannot be counted for either candidate, even though there is a cross in the circle on one of the tickets.

8. SAME—*what is a distinguishing mark is largely a question of fact.* The law forbids the placing of a mark upon a ballot which will enable it to be identified as cast by a particular voter, but the question whether a given mark is or is not distinguishing is largely a question of fact.

9. SAME—*dim crosses on back of ballot are not distinguishing marks.* Dim crosses, made with a blunt instrument, on the back of a ballot having no mark on its face except a cross in the circle at the head of one of the tickets are not distinguishing marks.

10. SAME—*crosses placed after certain names are distinguishing marks.* Crosses, marked with a lead pencil, after the names of a certain candidate for representative and a candidate for county treasurer must be treated as distinguishing marks.

11. SAME—*what must be treated as distinguishing mark.* The word "Jofe," written on the back of a ballot instead of the initials of any judge, must be treated as a distinguishing mark, even though it is claimed that the nickname of one of the judges was "Joed," where such judge testified that the writing was not his.

12. SAME—*when imperfectly printed ballot cannot be counted.* A ballot so imperfectly printed that a part of the circle and squares on the first ticket is left off cannot be counted for a candidate on that ticket, where the part of the square left opposite his name is so small that the voter's cross does not intersect within it.

13. SAME—*ballot having cross in circle but entire ticket crossed out cannot be counted.* A ballot having a cross in the democratic circle and a large pencil cross the whole length of the democratic ticket, there being no other marks, cannot be counted as a vote for any candidate on the ticket.

14. SAME—*what is not ground for rejecting a ballot.* A ballot properly marked for a candidate on one ticket should be counted for him although the voter made a large cross on another ticket erasing all of that ticket but the first eight names, in front of which he had marked crosses, where he afterwards attempted to erase all of the crosses on that ticket, including the large cross.

15. SAME—*erasure of a line in circle with moistened finger is not a distinguishing mark.* A ballot marked with a cross in the republican circle and with crosses in the squares before the names of certain republican and democratic candidates should not be rejected as having a distinguishing mark because a single line was marked in the democratic circle, which the voter apparently attempted to erase with a moistened finger.

16. SAME—*when marks on back of a ballot are distinguishing marks.* A ballot having a colored cross in the democratic circle and no other marks on its face but having a colored cross at the left of the county clerk's name on the back of the ballot and the names of two candidates for other offices written with a colored pencil, must be rejected as bearing distinguishing marks.

17. SAME—*letter written after initials of judge with a different colored pencil is a distinguishing mark.* The letter "D" written

after the initials of the judge on the back of a ballot and with a different colored pencil is a distinguishing mark, where judges of the election testify that they do not know how it came to be on the ballot.

18. SAME—*erasures by filling entire square or circle with pencil marks are not distinguishing marks.* Pencil marks blackening the entire square or circle, in an attempt to thus erase crosses made by mistake in such square or circle, are not distinguishing marks.

19. SAME—*when torn ballot should be counted.* A ballot having a piece torn off of one corner but leaving enough to show that it was marked for a certain candidate should be counted for him, where one of the judges testifies when the ballots were counted the torn piece was still attached to the ballot and that when put in place the cross in front of such candidate's name was complete.

20. SAME—*when torn ballot cannot be counted.* A ballot torn into three pieces cannot be counted, where all the facts and circumstances tend to show that the ballot was intact when given to the voter and that it was torn by the voter himself; nor can a ballot be counted which in some unexplained way has both upper corners torn off, including all of the circle of the first ticket, though there is a cross in the circle of the second ticket.

21. SAME—*absence of initials of judge is fatal.* The initials of the judge on the back of a ballot are for the purpose of identifying the ballot as a legal ballot, and ballots having no initials of a judge endorsed thereon cannot be counted.

22. SAME—*ballots are the best evidence if properly preserved.* The ballots are the best evidence of the result of the election if it appears that they have been preserved in the manner and by the proper officers required by law.

23. SAME—*when judges' returns cannot be taken as conclusive.* The judges' returns cannot be taken as conclusive of the result of an election, even though the ballots may be discredited, where the tally sheets show erasures of several tallies for the defeated candidate and the ballots about which there is no controversy entitle him to several more votes than were given him by the returns.

24. SAME—*rule where both ballots and returns are discredited.* Where the evidence discredits both the ballots and the returns, the true result must be determined by a consideration of both and of all the surrounding facts and circumstances.

25. SAME—*fraud in an election may be shown by circumstantial evidence.* Fraud in the conduct of an election may, and must frequently, be shown by circumstantial evidence.

26. SAME—*when the entire district need not be thrown out.* If from the proof it can be ascertained how the voters marked their

ballots so that they can be counted, or if the honest votes can be separated from the dishonest votes and the returns purged, the entire district need not be thrown out because of fraud.

27. SAME—*what evidence shows fraud.* The fact that twenty ballots from one district are marked with two kinds of pencils, in connection with their peculiar marking, and the facts that the district was the one last counted, that the result of the election elsewhere was known, and that several unauthorized persons handled the ballots during the count without any attempt being made to prevent them from doing so, establish fraud and show that the ballots were tampered with.

28. SAME—*when black pencil crosses should be ignored.* Where the marks made by the voter with the blue pencil furnished him show that he voted for a certain candidate the ballots should be counted for such candidate, even though there are crosses marked with a black pencil before the name of another candidate for the same office, where the evidence tends strongly to show that the black crosses were not made by the voter but by some other person, probably during the canvass of the vote.

29. SAME—*when ballot cannot be counted for either candidate.* A ballot not marked in the circle but having blue pencil crosses before the names of the candidates for several offices on the republican ticket and a black pencil cross before the name of the republican candidate for sheriff, there being no vote for any candidate on the democratic ticket, cannot be counted as a vote for either the republican or democratic candidate for sheriff, where the black cross was not made by the voter.

30. SAME—*when a ballot should be counted though evidently tampered with.* A ballot marked with a blue pencil cross in the republican circle and having no mark to indicate a vote for the democratic candidate for sheriff should be counted for the republican candidate for sheriff, although some person other than the voter has made a black pencil cross in the square opposite such candidate's name.

31. SAME—*ballot cannot be counted for either candidate if it is marked, by mistake, for both.* Where a ballot is marked for both the republican and democratic candidates for sheriff in such a manner as to show that it was merely a mistake of the voter and not the result of tampering with the ballot, the ballot cannot be counted for either candidate.

APPEAL from the County Court of Christian county; the Hon. C. A. PRATER, Judge, presiding.

HOGAN & WALLACE, for appellant.

PROVINE & PROVINE, L. G. GRUNDY, J. H. FORNOFF, and TAYLOR & TAYLOR, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the county court of Christian county declaring appellee elected to the office of sheriff of said county. At the regular election held on November 8, 1910, for that and other county offices, appellant, Thomas W. Brents, was the regular democratic candidate, and appellee, J. R. Smith, the regular republican candidate, for sheriff. William Hart and James A. Bickerdike were candidates, respectively, on the socialist and prohibition tickets. On the canvass of the returns Brents was given 3293, Smith 3299, Hart 172 and Bickerdike 100, and Smith was declared elected by a plurality of six votes. A contest was instituted in the county court of Christian county and the ballots were opened and re-counted, with the result that Brents was given 3277 votes, Smith 3283, Hart 176 and Bickerdike 119, and a finding made that appellee, Smith, was elected by a plurality of six votes. From that order and decree this appeal was taken to this court.

The contest was started on November 15, 1910. The petition charged incorrect counting of ballots in the various precincts but did not charge fraud. After an answer was filed setting out that some ballots had been incorrectly counted for the appellant in various precincts, the appellant, on January 3, 1911, filed, by leave of court, an amendment to his petition, charging that certain markings had been fraudulently placed upon ballots in district No. 4 of Pana, in said county, which inured to the benefit of appellee, and that said votes either ought to be counted as the ballots showed them to have been cast, or that the entire

precinct be thrown out and not counted for either candi-
date. It is here insisted that this amendment was improp-
erly allowed. Contests of elections under the present act
are to all intents and purposes chancery proceedings, sub-
ject to all the rules governing the same. (*Dale* v. *Irwin,*
78 Ill. 170; *Rodman* v. *Wurzburg,* 183 id. 395; *Weinberg*
v. *Noonan,* 193 id. 165.) This court held in *Dale* v. *Irwin,*
*supra,* that the contestant could by an amendment add points
of contest not contained in his original petition. This is in
accord with the general chancery practice, and we see no
reason to depart from that ruling.

It is next insisted that under the ruling of this court in
*Conway* v. *Sexton,* 243 Ill. 59, the petition should be dis-
missed because the socialist and prohibition candidates were
not made parties to the contest. There are two sufficient
answers to this objection: First, we do not find that this
point was raised in the trial court; and second, the petition
and answer show that it was unnecessary to make any of
the other candidates parties, as it would be most unreason-
able to believe that one of them could gain enough on a
re-count to entitle him to be declared elected. The result
of the contest proved that fact. In the *Conway-Sexton*
*case* the pleadings did not show, and in the light of the
facts in that case could not honestly show, that the candi-
dates who were not made parties might not on the re-count
have been necessary parties.

On the re-count the uncontested ballots agreed upon by
attorneys for both sides gave Brents 3255 votes and Smith
3217 votes, leaving 110 contested ballots. The original con-
tested ballots have been certified to this court with the
record. They were each numbered in the court below for
identification, and we shall find it convenient to identify
the ballots by referring to those numbers. Many of the
ballots can be divided into groups, according to the nature
of the objections, and disposed of together.

Fifty-two ballots are objected to because they have on the front or back a number or numbers, followed by words. From the appearance of the ballots, as well as from the testimony of the judges and clerks, these numbers and words were made by the judges as an aid in counting the ballots and indicate the number of votes credited to various candidates. Judges and clerks should not mark ballots in this manner while counting the votes, but when it appears that the voter has complied with the law in marking his ballot he should not be disfranchised by such marks made by the judges. (*Kerr* v. *Flewelling*, 235 Ill. 326; *Rexroth* v. *Schein,* 206 id. 80.) Eleven of these votes were properly counted by the court for Brents and forty-one for Smith.

Seven ballots are objected to because, it is argued, the lines forming the attempted cross do not intersect inside the square or circle or do not form a cross. The rule often stated by this court is, that if an honest attempt was made to follow the law in making the cross in an appropriate circle or square, the fact that the cross was imperfect will not prevent the ballot being counted. (*Parker* v. *Orr,* 158 Ill. 609; *Kerr* v. *Flewelling, supra; Winn* v. *Blackman,* 229 Ill. 198; *Apple* v. *Barcroft,* 158 id. 649.) If the lines meet but do not cross or intersect they cannot be held a cross under the authorities, but if they intersect and cross, even slightly, within the proper circle or square they should be considered as a cross. Following this rule, ballots 216, 2133 and 2708 should be counted for Brents and ballots 2449, 2779, 3883 and 6875 for Smith. Ballot 4176 has a V-shaped mark in the square before the name of appellee, Smith. At no point in the square is there an intersection of the lines to form a cross. Under the ruling of this court in *Winn* v. *Blackman,* 229 Ill. 198, this ballot cannot be counted for Smith. Ballot 5282 has in the republican circle an irregularly-shaped mark similar in form to the letter T. This ballot should be counted for Smith. *Parker* v. *Orr, supra.*

Ballots 3014, 3589, 3783 and 6103 are objected to because the respective crosses in the republican circle or square before Smith are dim, or not made, as claimed in some cases, by lead pencil or pen. We believe in all these cases the voter honestly attempted to make a cross, in some instances by pressing the pencil very lightly on the paper and in other instances by using a pencil when the lead was broken. All these ballots should be counted for Smith. (*Rexroth* v. *Schein, supra.*) Ballot 6053, objected to because of dimness of the cross, will be counted for Brents.

Ballot 2604 has a mark in the democratic circle resembling a letter O! There being no attempt at a cross, this ballot cannot be counted for Brents. *Parker* v. *Orr, supra.*

Ballot 3450 has a cross in the democratic circle and the names of both Brents and Smith are marked out with a lead pencil line drawn horizontally through each name. This court has held that the voter can erase the name of the candidate and write in another and thus vote for the candidate whose name is written in. (*Winn* v. *Blackman, supra.*) While the precise question here raised does not seem to have been decided in any of the cases, we think, under the reasoning of the authorities, this vote cannot be counted for Brents.

Various ballots are objected to by each party on the ground that they bear distinguishing marks. The law forbids such a mark as will distinguish and separate the particular ballot from the other ballots cast at the election,—a mark put upon the ballot to indicate who cast it and to evade its secrecy. Whether a given mark is or is not distinguishing, is largely, if not wholly, a question of fact. *Winn* v. *Blackman, supra.*

It is contended by appellant that ballot 4993 should be counted for him while he contends that ballot 2154 should not be counted for appellee. If one of these ballots should be counted the other should be, and therefore the result would not be changed. Neither will be counted.

Ballot 3641 has a lead pencil cross in the democratic circle and no other mark on the face of the ballot. On the back of the ballot, a little under the official printing, are two dim crosses made by some blunt instrument pressing into the paper but no mark of lead or other marking substance. If held up to the light they show slightly through the ballot, but not in such a way as to indicate any mark as to any candidate. We hold this was not a distinguishing mark and the ballot will be counted for appellant. Ballot 1442 has a lead pencil cross in the republican circle and a lead pencil cross after the name Harp, democratic candidate for representative, and another after the name of Brockamp, the democratic candidate for county treasurer. No explanation is given as to how these marks were made on the ballots. It is argued that they are distinguishing marks. From the appearance of this ballot we are disposed to hold that these crosses are distinguishing marks and the ballot cannot be counted for Smith.

Ballott 1073 is properly marked with a cross in the square before the name of appellee, Smith. On the back of the ballot is found the word "Jofe" instead of the initials of a judge. It is argued by appellee that this is a nickname of one of the judges and that he placed it there instead of his initials. The judges in this precinct all testified as to this ballot, and the man whose nickname was claimed to be "Joed" stated that the writing was not his. We must hold this writing a distinguishing mark and the ballot should not be counted for Smith.

Ballot 2478 was apparently fed into the printing press in such manner that a part of the squares and of the circle on the democratic ticket are not on the ballot, that ticket being at the left-hand edge. The voter attempted to place a cross in a number of these parts of squares. As he approached the lower edge of the ballot the portion of the square in front of Brents' name did not give him room in which to place the cross and the lines of the cross intersect

outside of the square. This ballot was mutilated and should not have been given by the judges to the voter, and when they did give it to him he should have asked for one that was printed according to law. It cannot be counted for Brents. *Kerr* v. *Flewelling, supra.*

Ballot 2953 is marked with a lead pencil cross in the democratic circle and a large pencil cross covering the whole length of the democratic ticket, with no other mark on the ballot. This ballot, under the reasoning of this court in *Kerr* v. *Flewelling, supra,* as to this class of marks, can not be counted for Brents.

Ballot 6708 has pencil crosses in the squares before the first eight names on the socialist ticket and down the entire length of that ticket is made a large cross. All of the crosses in the squares on that ticket, as well as the large cross, have been partly erased. There are also crosses in nine of the squares on the republican ticket. Evidently there was an attempt to make crosses in the respective squares before the last three names on the republican ticket and an erasure of these crosses, the voter rubbing out in the attempt a large part of the three printed squares. There are also lead pencil crosses in the respective squares before the last three names on the democratic ticket, including Brents'. If there had been no attempt to erase the large cross on the socialist ticket, on the reasoning of the case last cited this ballot could not have been counted, but we do not feel like extending the ruling as to such marks further than laid down in that case. We are of the opinion that these crosses on the socialist ticket, as well as at the end of the republican ticket, were made by mistake, or the voter afterward changed his mind. This vote should be counted for Brents.

Ballot 3835 has a pencil cross in the circle at the head of the republican ticket and pencil crosses in the squares before eleven republican candidates (including Smith) and one democratic. There is also a single line made through

the democratic circle and an attempt to erase this, as if the voter had drawn a moistened finger over the circle. We do not think this can be considered a distinguishing mark. The ballot should be counted for Smith.

Ballot 5747 has a colored pencil cross in the democratic circle and no other mark on the face of the ballot. On the back of the ballot, at the left of the official printed signature of Henry J. Burke, the county clerk, is a colored pencil cross. A little below Burke's name are the names "F. Brents" and "Folkes," written with colored pencil. It is argued that the voter attempted to emphasize the fact that he was voting for Burke (who was running for reelection) and for Brents and Fowkes by making the cross before the printed signature and writing in the names of the other two candidates on the back of the ballot. However that may be, we consider this was so marked a departure from the law and so plainly distinguishing that the ballot cannot be counted. (*Smith* v. *Reid,* 223 Ill. 493; *Winn* v. *Blackman, supra.*) Had these names been on the face of the ballot where the candidates' names were printed, a different situation might have been presented.

Ballot 6636 has a pencil cross in the democratic circle and a cross in the square before the name of Evans, republican candidate for county superintendent, and no other mark on the face of the ballot. On the back of the ballot were the initials of one of the judges, followed, in a different kind of pencil, by a capital letter "D." The judges were called and stated that they did not know how this "D" was marked on the ballot. We hold it a distinguishing mark, and the ballot cannot be counted for Brents.

Ballot 3565 has a cross in the republican circle. The square before the name of Walter M. Provine, republican candidate for representative, has been almost completely filled in by lead pencil marks. Ballot 4103 has a cross in the republican circle. There is also a cross in the democratic circle, and the circle was almost completely filled in

with pencil marks covering the cross. Ballots 4779, 5125 and 6228 have each a cross in the square before the name of some candidate (not Smith) on the republican ticket, and then, in each instance, the square is filled in with lead pencil marks covering the cross. It is clear from the face of all these five ballots that the crosses over which pencil marks are drawn were made by mistake and then an attempt made to mark them out by using a lead pencil, as indicated. We do not think these pencil erasures can be held to be distinguishing marks. All five ballots should be counted for Smith.

Three ballots, each from a different precinct, are torn. Ballot 1076 has the lower left-hand corner torn off, but enough remains to show that there was a cross in the square before Brents. One of the judges in that precinct testified that he remembered, when they were counting, seeing this ballot with the torn corner still hanging by a shred, and that the cross, when the two pieces were placed together, was complete. On this situation of the record this ballot should be counted for Brents. Ballot 2281 was torn in three pieces, the democratic ticket at the left being on a separate piece and the socialist labor ticket at the right of the ballot being practically all on a separate piece. There is a cross in the republican circle and no other mark on the face of the ballot. All three of the pieces were found in the ballot-box. The judges did not know how it became torn. They testified it was not torn when they delivered it, but did not know whether it was given back by the voter torn, or not; that the ballot-box became so full that it was difficult to put the ballots through the slot and they used a stick to push them down. If the voter tore it in this manner he should have returned it and obtained another ballot. The initials of the judge, part of which appears on one piece and part on another, show that the ballot was handed to the voter intact, and it does not appear reasonable, from an inspection of the ballot, that it

was so torn while in the box. We are of opinion that this ballot was torn by the voter and should not be counted. Ballot 3579 had both upper corners torn off,—evidently torn at the same time when the ballot was folded once. The circle on the democratic ticket is torn completely away. There is a cross in the republican circle. The judges of this precinct testified that they did not know how this ballot was torn and were not sure it was torn when they counted it. The democratic circle being completely torn away we cannot tell whether it had any marks in it or not. On this state of the record the ballot cannot be counted for Smith.

Ballots 830, 860 and 1033 are marked for Smith. All of these ballots were cast in the first district of the Buckhart precinct. None of them has the initials of any judge of that precinct on the back. Under the holding of this court in *Slenker* v. *Engel*, (*ante*, p. 499,) and cases there cited, these ballots cannot be counted.

We have now discussed all the contested ballots except twenty from the fourth district, Pana precinct. Appellant contends that such fraud was committed in this district as to change the result. It is claimed that a number of unauthorized persons handled ballots during the count; that during the canvass of the vote some of the judges absented themselves from the room for a time, and that the closing of the count was purposely delayed until between two and three o'clock in the morning, and in the meantime the judges and clerks had learned the result of the vote on sheriff in the other districts in the county. If the returns in this district were in proper condition it might be argued that the figures of the tally sheets and statements of votes should be taken as conclusive of the result, but in this district the tally sheets show erasures, a number of tallies apparently having been scratched off from Brents. Moreover, the uncontested vote for Brents, omitting the disputed ballots, was three greater than the vote given him by the

returns of the judges and clerks.. Where the ballots have been properly preserved they are the best evidence of the result of the election. (*Bonney* v. *Finch,* 180 Ill. 133; *Caldwell* v. *McElvain,* 184 id. 552.) In order that the ballots should be controlling as evidence it must affirmatively appear that they have been preserved in the manner required by law and by the proper officers. (*Beall* v. *Albert,* 159 Ill. 127; *Jeter* v. *Headley,* 186 id. 34.) After the ballots were given to the county clerk by the judges of this precinct, as well as the judges of other precincts, the evidence shows that they were properly preserved by the county clerk and were opened at the time of the contest in the same condition as when returned to him. Where the evidence discredits both the ballots and the returns of the election officials the true result of the election must be determined by a consideration of both and of all other circumstances which will aid in determining the truth of the matter at issue. *Roland* v. *Walker,* 244 Ill. 129; *West* v. *Sloan,* 238 id. 330.

All but one of these twenty ballots from this district are marked partly in blue indelible pencil and partly in ordinary black pencil. The judges testified that blue indelible pencils were placed in the voting booths to start with, but that voters called for pencils at various times during the day and black pencils were furnished. A number of these ballots, from their appearance, might have been marked entirely by the respective voters, but it is impossible to so conclude as to the majority of the twenty. If there had been only two or three ballots thus marked with different pencils in the same district there would be less ground for suspicion. Fraud in the conduct of an election may be shown by circumstantial evidence, (McCrary on Elections,—4th ed.—sec. 575,) and frequently can be shown in no other way. The peculiar marking of these ballots would, in itself, arouse suspicion, but when taken in connection with the uncontradicted proof in this record that this was

the last district to be counted; that the result as to sheriff was known before the count in the district was closed; that three or four persons who had nothing to do with the canvass,—were not judges and clerks,—handled these ballots before they were counted, two of them having lead pencils in their hands; that the door of the polling place was open during the time the counting was going on; that no attempt was made to keep unauthorized persons from counting the ballots,—the proof must be held practically conclusive, from this record, that some of these ballots were tampered with. If from the proof it can be ascertained how the voters marked their ballots and they can be thus counted, or if the honest votes can be separated from the dishonest votes and the returns purged, then the entire district need not be thrown out. . McCrary on Elections,—4th ed.—sec. 583.

We will first consider nine of these ballots, namely, 3742, 3744, 3748, 3756, 3763, 3764, 3772, 3774 and 3811. Each one of these ballots is marked with an indelible blue pencil for various candidates on the democratic and republican tickets. In every one of the nine ballots there is a cross made by an indelible pencil in the square before the name of appellant, Brents, for sheriff. Taking the indelible pencil crosses alone, it is clear that the person who made these crosses on each of these ballots was voting intelligently for a complete set of candidates on the ballot, although in every instance he voted a split ticket. Ballots 3742, 3763, 3772 and 3811 each have a black pencil cross in the square before the name of appellee, Smith. Ballot 3756 has a black lead pencil ⌐ in the square before Smith's name. Ballots 3748 and 3764 have black pencil crosses in the respective squares before Smith and the republican candidate for county superintendent. Ballots 3744 and 3774 have black lead pencil crosses in the respective squares before the names of appellee Smith and the republican candiate for county judge. Some, if not all, of the crosses made by black pencil appear to have been made

hastily and do not resemble in form the blue pencil crosses. We think it is clear that all of these nine ballots were marked originally by the voter with a blue indelible pencil for various candidates, including appellant, Brents, for sheriff, and that the black pencil marks were made by another person than the voter. The evidence tends strongly to show that the black crosses were made during the canvass of the votes in the precinct. If there had been only one of these ballots marked with a different colored pencil, even though it contained different colored crosses in the two squares before the candidates for the same office, it might be possible to believe that the voter had changed pencils and had erroneously voted for two candidates for the same office; but it is hardly within the range of probability that nine voters in the same voting district would mark their ballots with two different lead pencils, and that everyone of them would vote for two candidates for sheriff and use a blue pencil in making a cross in the square before the name of Brents and a black pencil in making a cross before the name of Smith. The black pencil crosses, so far as they affect appellant and appellee, on this record must be disregarded and these nine ballots counted for Brents.

Ballot 3743 has a blue pencil cross in the democratic circle and a blue pencil cross in the square before the name of Provine, republican candidate for representative, and a black pencil cross in the square before the name of appellee, Smith. If this ballot were the only one in this precinct marked in this manner we should not be disposed to disregard this black pencil cross, but in view of the similarity of this ballot to the last ballots considered, we think the black pencil cross should be ignored and the ballot counted for appellant, Brents.

Ballot 3757 has blue pencil crosses in the squares before five republican candidates for various offices and in the squares before three republican candidates for various

other offices, and a black pencil cross in the square before the name of appellee, Smith. There is no other mark on the face of the ballot. In view of the facts on this record we hold that the black pencil cross should be ignored and this ballot not be counted for either appellant or appellee.

Ballot 3823 has a blue pencil cross in the circle at the head of the democratic ticket. The three black crosses marked on this ballot do not in any way affect any of the candidates for sheriff, and the ballot should be counted for Brents.

Ballot 3765 has a blue pencil cross in the democratic circle and also in the square before the name of Harp, democratic candidate for representative, and a black pencil cross partly in and partly out of the square before the name of Smith, the intersection being plainly outside of the square. For this reason, as well as for the reasons already given, this black pencil cross should be ignored and the ballot counted for Brents.

Ballots 3773, 3777 and 3780 each have a blue pencil cross in the square before the name of appellee, Smith. The black lead pencil crosses in the various squares on each of these ballots are not before the names of any of the candidates for sheriff or do not affect in any way the counting of the ballots as to that office. These three ballots should therefore be counted for appellee, Smith.

Ballot 3758 is marked with a blue pencil cross in the republican circle, in the square before the name of Provine, candidate for representative on the same ticket, and in the respective squares before the democratic candidates for county clerk and county superintendent. On the republican ticket there are black pencil crosses in the respective squares before the candidates for county judge, sheriff and county superintendent. Following a consistent line of reasoning as to this district and these different colored pencil crosses, the blue pencil cross in the circle at the head of the repub-

lican ticket would still require this ballot to be counted for appellee, Smith.

Ballots 3721 and 3768 have blue pencil crosses before various candidates and black lead pencil crosses before various other candidates, including a black lead pencil cross on each ballot in the square before Smith. There is no mark except these two crosses on either of the ballots that in any way affects the counting as to sheriff. The black pencil crosses on ballot 3768 are so scattered over the ballot that we think it would have been very difficult for a person secretly to have made them all during the time the ballots were being counted. On most, if not all, of the previous seventeen ballots that we have considered from this precinct, the black lead pencil crosses appear to have been made hastily and in a different form from the blue pencil marks. This is not true as to ballot 3768 and possibly is not true as to ballot 3721. Practically the only thing that throws doubt on these two ballots is the extrinsic evidence. Notwithstanding that evidence we are disposed to count these two ballots for appellee, Smith.

Ballot 3781 has a blue lead pencil cross in the square before the democratic candidate for county treasurer, in the square before the name of appellant and the square before appellee, and the square before the republican candidate for county superintendent. These are all the marks on the face of the ballot. This ballot, alone, would not arouse suspicion of anything more than a mistake on the part of the voter, and even with the rest of the proof in the record we are not prepared to say that the voter did not make the two blue pencil marks in the respective squares before the names of appellant and appellee, both running for sheriff. This ballot cannot be counted for either appellant or appellee.

It is insisted by appellant that if the court should count these ballots in said fourth Pana district as indicated above, then, following the same reasoning, the court should count

eight ballots in district No. 1 of Buckhart township, which were not counted by the trial court. It is contended by the appellee that these ballots cannot be considered by this court as they were not properly presented here by the record. We are inclined to agree with that contention. We deem it proper, however, to say that there is no proof of any kind in the record to show that any fraud was committed in the first Buckhart district. Although on some of these ballots different colored pencils were used in marking crosses, still, without some extrinsic proof of fraud we would not feel justified in ignoring the black pencil crosses, as we did in the fourth Pana district. Moreover, if this were done it would not change the final result. While the result on the face of the returns, on the contest in the trial court and in the counting of the ballots in this court has been close, if a consistent line of reasoning be followed as to the various questions raised, we are convinced that the result cannot be more favorable to appellee than reached in the foregoing opinion.

Apparently no effort was made by the judges of election in the fourth district of Pana, during the canvass of the votes, to enforce the law and prevent unauthorized persons from handling the ballots. An election conducted with as little regard to the law as was the canvass of the ballots in that district would be but a mockery. The safety and perpetuity of popular government depends on the purity of its elections. The sanctity of the ballot should be safeguarded in every possible manner. The courts can perform no higher duty, in a contest of this character, than to enforce strictly and impartially the election laws of the State.

Adding to the 3255 uncontested votes for appellant, Brents, the 30 contested ballots we have counted for him, gives him 3285. Adding to Smith's 3217 uncontested votes the 62 contested ballots we have counted for him, gives him 3279. This leaves a plurality of six votes for Brents. It

follows that Thomas W. Brents was duly elected sheriff of Christian county, and that the county court erred in finding appellee, J. R. Smith, elected and rendering judgment accordingly.

The judgment of the county court will be reversed and the cause remanded to that court, with directions to enter a judgment in favor of appellant.

*Reversed and remanded, with directions.*