Williams, J.
 

 This case involves an election so close that the addition of one vote in favor of the proposition or the elimination of one vote against it would change the result.
 

 Section 2293-21, General Code, which refers to sub
 
 *411
 
 mission of the question of issuing bonds to the electorate of a subdivision requires that the election thereon shall be held at the regular place for voting and shall be conducted, canvassed and certified in the same manner as regular elections for county officers.
 

 Plaintiffs’ first assignment of error is that the trial court refused to count Exhibit No. 1, which was a ballot marked with a cross in black ink in the blank space before the words “For the bond issue.”
 

 The provision of Section 5069, General Code (now Section 4785-131, General Code), which requires all marks upon the ballot to be made in black lead pencil has been held to be mandatory.
 
 Devine
 
 v.
 
 State, ex rel. Tucker,
 
 105 Ohio St., 288, 136 N. E., 922.
 

 Evidence was adduced in the trial court to the effect that the ballot marked with ink (Exhibit 1) was an absent voter’s ballot, whereas in the
 
 Devine case
 
 neither the opinion nor the record discloses whether the ballot was marked in the voting booth or was an absent voter’s ballot. This court is of the opinion that the mandatory requirement as to the use of the black lead pencil applies with equal force to all ballots cast, whether marked at the polling place or by an absent voter. Consequently the ballot was properly rejected.
 

 The ballots designated Exhibits 2, 3, 4, 5 and 7 were counted in favor of the bond issue, and regarding them plaintiffs make no contention. Exhibit 6 was marked with the word “no” in the blank space before the words “Against the bond issue” and plaintiffs make no claim that it is valid for the reason, no doubt, that it has been held heretofore that such a ballot cannot be counted.
 
 Village of Richwood
 
 v.
 
 Algower,
 
 95 Ohio St., 268, 116 N. E., 462.
 

 For a second ground of error plaintiffs claim the ■court below erred in not refusing to count the plaintiffs’ Exhibit G on account of the manner in which
 
 *412
 
 it was enclosed and transmitted to the hoard of elections.
 

 Plaintiffs state their contention in their brief as follows: “Plaintiffs’ Exhibit B shows that the judges and clerks in Harlan, south precinct, certified to the board of elections that there were seven blank ballots at the conclusion of the count (Exhibit B and page 26 of the record). The evidence discloses (pages 44, 50 and 52) 'that the sack in which the ballots were returned to the board of elections was not sealed. In the contest the court counted a ballot (Plaintiffs’ Exhibit G) as a vote against the issue, although this ballot was one of those which the officials said w'as a blank when it was placed in the unsealed sack for return to the board of elections.”
 

 Counsel for plaintiffs claim that the action of the judges of election was in violation of Section 4785-147, General Code, which requires that the counted ballots shall be sealed in an envelope by the judges of election before transmission to the board of elections and provides for the opening of the envelopes containing uncounted ballots and the counting of such ballots at least one day before the beginning of the official count. There is evidence that the seven ballots (among which was Exhibit G) were placed in a small envelope, then the small envelope put in a larger envelope with the counted ballots and the larger envelope transmitted to the board of elections. It appears the precinct election officials had difficulty in making the seals on the larger envelope stick; but there is evidence tending to show that it was sealed. Failure on their part to transmit the seven ballots in a separate sealed envelope which was purely a mistake resulted in a failure of the board of elections to discover and count Exhibit G, previous to the official count; but these irregularities were not of such a character as to require the rejection of the ballot.
 
 State, ex rel. Bambach,
 
 v.
 
 Markley,
 
 20 O. D., 113, 9 C. C. (N. S.), 561; affirmed by the
 
 *413
 
 Supreme Court without opinion,
 
 Markley
 
 v.
 
 State, ex rel. Bambach, 76
 
 Ohio St., 636, 81 N. E., 1190.
 

 Regarding the third assignment of error, we quote in full what plaintiffs say:
 

 “The third assignment of error involves ballots (Plaintiffs’ Exhibits H and I) which were taken from Precinct Harlan, south, under the circumstances related above and we believe that they may not be counted for the reasons set out above, and the additional one that they show for themselves that they are defaced and have identification marks on them.”
 

 The evidence does not disclose whether Exhibits H and I were returned among the seven ballots previously referred to or not but, if they were, what has been said about the irregularity in sealing and transmitting the returns would apply to them as well as Exhibit G.
 

 Exhibits H and I show a cross-mark in the blank space before the Words “Against the bond issue” and an erasure in the blank space before the words “For the bond issue. ’ ’ Of course an erasure which amounts to a distinguishing mark corruptly and fraudulently made by the voter would invalidate the ballot and require its rejection.
 

 It would seem to be a great injustice to refuse to count a vote for a candidate or issue merely because the voter, by an honest mistake, marks his ballot in the wrong place and then, on discovering his error, erases the mark and casts his vote by making his cross-mark in the blank space so as to correctly express his choice; ballots with similar erasures have frequently been held valid.
 
 Brents
 
 v.
 
 Smith,
 
 250 Ill., 521, 95 N. E., 484;
 
 McMahon
 
 v.
 
 Polk,
 
 10 S. D., 296, 73 N. W., 77, 47 L. R. A., 830, and annotation at page 843;
 
 Sweetser
 
 v.
 
 Pacheco,
 
 172 Cal., 137, 155 P., 639;
 
 Fullarton
 
 v.
 
 McCaffrey,
 
 177 Iowa, 64, 158 N. W., 506;
 
 Rexroth
 
 v.
 
 Schein,
 
 206 Ill., 80, 69 N. E., 240;
 
 Arnold
 
 
 *414
 
 v.
 
 Keil,
 
 252 Ill., 340, 96 N. E., 869;
 
 State, ex rel. Orr,
 
 v.
 
 Fawcett,
 
 17 Wash., 188, 49 P., 346.
 

 It is true that there are some cases holding ballots could not be counted by reason of erasures,'but the variation in decisions is in large measure due to the statutes of the particular jurisdictions. The decisions in those states where there is an express statute invalidating an erased ballot are not helpful. There is no enactment in Ohio covering erasures except the provision found in Section 4785-131, General Code, •which reads: “If a voter soils or defaces a ballot so that it cannot be used, he may successively obtain others, one at a time, not exceeding in all three, upon returning each ballot so soiled or defaced.” This language implies that a ballot may be voted and counted so long as it is not soiled or defaced by the voter to such an extent as not to be usable. Each case must stand on its own particular facts and in the case at bar there seems to be no valid reason for disturbing a finding of the trial court that the erasures did not invalidate Exhibits H and I, if such a finding was made. The only reference to these two exhibits to be found in the record is the following which we quote from the bill of exceptions:
 

 “Mr. Mills: And we would like to introduce Plaintiffs’ Exhibit H for identification, and Plaintiffs’ Exhibit I for identification. The one ballot shows an erasure in the space for the bond issue, * * * and is then marked with a cross mark before ‘Against the bond issue.’ That is Plaintiffs’ Exhibit H.
 

 “Mr. Brown: We object to that.
 

 “The Court: Objection overruled.
 

 “Mr. Brown: Exception.
 

 “Mr. Mills: Plaintiffs’ Exhibit I for identification is a ballot which has been marked for the bond issue, apparently erased and marked against the bond issue, both marks being shown on the ballot. I wish to have that introduced as Plaintiffs’ Exhibit I.
 

 
 *415
 
 “Objection by counsel for defendants.
 

 “Objection overruled. Exception noted.”
 

 It does not appear in tbe record whether those ballots were counted at all or whether the trial court ruled upon the question or held the erasures invalidated them. It is true that the cause was briefed and argued on the theory that those two ballots were counted against the proposition; but the record must control. Under the circumstances the trial court committed no prejudicial error as to Exhibits H and I.
 

 The trial court properly found that the board of elections correctly certified the vote to be 419 for and 226 against the issue. This gave the affirmative 64.9612 per cent of the ballots cast. Should this amount be considered 65 per cent as required by Section 2293-23, General Code?
 

 The argument on the affirmative of this query is put ingeniously by counsel for plaintiffs as follows: “As there were 645 persons voting and 419 are held by the court to have approved and 226 disapproved it is found by simple arithmetic that 65 per cent of the total is 419.25 or in fractions 419 25/100. One must inquire accordingly the categorical meaning of the .25 or 25/100. (The term ‘419’ is' quite simple: It means 419 persons and/or the ballots cast by them.) Does, therefore, .25 means 25/100 of a person or of a ballot? Patently not, since there is no physical possibility of there existing 25/100 of a person or ballot. What the 65 per cent therefore is bound to mean is necessarily (no such a
 
 res
 
 existing or possible to exist as .25 or 25/100 of a person or ballot in relation at least to the Ohio Election Law) that whole number nearest to the 65 per cent of the total vote cast and counted as such, which without any fractional remainder equals such 65 per cent. It is true that when the arithmetical process is reversed and one seeks the percentage which 419 aye votes bears to the 645 votes cast the result is found to be the number 64.9612. Yet, the language of
 
 *416
 
 the statute considered — ‘65 per cent of those voting’'— the process commanded by the statute is to take 65 per cent of 645 and not ask or care what percentage 419 bears to 645.”
 

 The court cannot accede to this contention and believes that it refutes itself. Since only 64.9612 per cent of the vote cast was in favor of the bond issue, the trial court properly held that the proposition did not carry by 65 per cent of the votes cast.
 

 As there is no error apparent on the face of the record, the judgment will be affirmed.
 

 Judgment affirmed.
 

 Matthias, Day, Zimmerman, Myers and Gorman, JJ., concur.
 

 Weygandt, C. J., is of the opinion that the appeal should be dismissed for the reasons set forth on page 408 in the case of
 
 Mehling
 
 v.
 
 Moorehead, ante.