Lieghley, J.
This is an appeal by each of the three defeated candidates, under Sections 5148 to 5153 and 5090-1.
During the hearing, about eighty witnesses were examined, eighteen of whom were Republican clerks and judges of election, and the other witnesses who were examined were party witnesses to the count in the booths on the night of the election.
The court assumes that this is a judicial inquiry, and consequently the court may regard and consider and determine the credibility of the witnesses. The testimony of a number of the witnesses is not at all satisfactory. The court is unable to reconcile the variance in the testimony of Wenger, judge, and Coleman, judge of elections, in Booth G-, Ward 2; also Rohringer, a witness, and Wetzel, judge, in Precinct I, Ward 18. The testimony of the witness Goettling, when compared with the transcript of the vote in Ward 4, Precinct B, East Cleveland, is unsatisfactory. Likewise Schuh, who testified there were 51 straight Republican ballots, yet Dittrick and McDonald received *88 only 48 and 44 votes, respectively. 'The testimony of Sidney Y. Thompson, given in two different depositions, is rendered valueless by the character of it. Compare the testimony of the witness Summerville with the vote as certified by the board of elections. A large number of the witnesses testified positively with reference to the number of ballots incorrectly counted, but have no memory of anything else in relation to what occurred in the booth on election night, nor the number of votes relating to any other subject-matter than that of interest in this law suit. Some of the witnesses saw only the Democratic tickets, and no Republican ballots, straight or split. It further appears that the attention of some of the witnesses was first called to the manner of the count of some split ballots by the election officers some weeks after when the witnesses were inquired of in certain rooms in the city, called to those rooms for the specific purpose. No one carefully reviewing 'the proof offered in this contest could give full credence to what has-been testified to as shown by the record. In fact, the many discrepancies and contradictions require a liberal discount from the claims made therefor.
The original tally sheet of the election in question, duly certified by the officers thereof, is prima facie evidence of the election of the contestees in this case. 21 O. S., 216; 26 O. S., 549; 106 Minn., 393-427.
Elections belong to the political branch of the government, and not the judicial, and are not per se the subject of judicial cognizance, but are matters for political regulation. The power of the courts to determine election contests is purely statutory. They have no inherent common law or equity powers over elections. 89 O. S., 396; 90 O. S., 311; 106 Minn., 393.
It was claimed by the contestees that the judges and clerks of election were, but should not be, permitted to testify, which claim was overruled by the court, and, as we believe, correctly so. Judges and clerks of election are not permitted to take the stand and swear that their returns were false and untrue. But judges and clerks may be inquired of in respect to the manner *89 in which certain ballots were counted. 5 C.C.(N.S.), 119-125; 64 O. S., 89-96.
It is claimed by the contestants that about 325 ballots marked with a cross opposite or in front of the name of Woodrow Wilson were counted incorrectly as straight Democratic tickets. There are a number of reputable authorities of other states supporting the claims of contestants. Section 5070, subsection 9, provides:
“No ballot shall be rejected for any technical error which does not make it impossible to determine the voter’s choice.”
In view of the large interest taken by the electors in this county in the election of November, 1916, the prominence which the candidacy of Cox attained against the candidacy of Willis, the activities of the various candidates for county office, and the further fact that those ballots so marked average four or five per precinct, can it be claimed that those voters intended to vote for Wilson only? Some such ballots were marked in the same manner opposite the name of Hughes on the Republican ticket. Doubtless full examination of the ballots would disclose that an equal number so marked the Republican ballot. What was the intention of each voter ? In the instance of a voter placing his cross in front of the name of a presidential elector, one for whom the voter directly exercises the right of franchise, the ballot must be counted for that elector only, for in that case the intention must be deemed to have been to vote for the elector marked; but in the instance of a cross in front of the name of either Wilson or Hughes, the voter does not vote for either one directly, but his cross appears at the top of the ballot, not in the place designated by statute that the same shall be placed. This court is of the opinion that the intention of said voters was to vote the straight ticket.
“Ballots marked with a cross at the head of a particular party column, although outside the square containing the party device, are to be counted for the candidates of that party.” 98 Ky., 596; State, ex rel, v. Markley, 9 C.C.(N.S.), 560.
“The right of suffrage should not be denied, to a voter because of his failure to follow the strict letter of the law in *90 the marking of his ballot, and while laxity in the marking of ballots by those who know how should not be encouraged, yet in the case of irregular markings and erasures by a voter who is evidently actuated with an honest purpose, his ballot should be counted if -his intention can be ascertained with reasonable certainty.” 18 N. P., 500; 92 O. S., 101-112.
Section 5070 is not mandatory but directory. 158 Ill., 609-17; 92 O. S., 101-112.
It is not surprising that a voter who is called upon but once a year to exercise his right of franchise should sometimes mark his ballot at variance with the requirement of the statute. If he, in a sufficiently clear manner, evidences his intention, that intention should override the directions of the statute. Therefore, it is my opinion that these ballots with the cross opposite the name of either Wilson or Hughes should be counted as straight Democratic or. straight Kepubliean tickets, and as a vote for all the candidates appearing on said ticket.
However, it is far different with the clerks and judges of elections in the various booths throughout the county referred to in this case. .These men are presumed to know the method of counting ballots. They receive instructions and have before them printed rules for counting the same, and sample ballots marked with directions how to count the ballots so marked. Yet in the face of all their supposed intelligence on the subject, and despite all the instructions and schooling provided them, the monumental ignorance displayed in the proof in this case of the correct manner of counting split tickets can not be accounted for on any other theory than lack of intelligence or indifference. It is a matter that deserves the earnest attention of the board of deputy state supervisors of elections of this county in an earnest effort to correct a situation apparently appalling, even after a proper discount is made from the proof offered in this case by reason of lack of credibility of witnesses in some instances.
The burden rests upon the contestants to establish their claims. 25 Hun, 456; 106 Minn., 393-427.
It has been the well-established law that the burden rests upon the contestants to show that there was either error, mis *91 take or fraud in the count of the ballots, and that that error, mistake or fraud was prejudicial to the 'Contestants, which means that the error, mistake or fraud was of such volume as would probably change the result of the election. In this case no fraud is claimed. Such is the law in this state today, unless the amendment to Section 5090-1, as it appears in 106 Ohio Laws, 209, has the effect of amending the law of the state as it theretofore was.
The amendment to Section 5090-1, as the same now appears, in 106 Ohio Laws, 209, was made by the addition of the following words: “after a prima facie case of fraud, mistake or error is shown.” It was practically conceded by counsel for contestants at the hearing that the law was as above stated before said amendment. It is now claimed by the contestants that they have shown by proof that substantially 1,200 ballots are affected by claimed errors in counting thereof, which amounts to over 10 errors on the average per precinct. And if it may be presumed, and it is claimed by counsel for contestants that it may, that that average amount of errors would continue throughout all the precincts to which no testimony was directed, then in that event the result of the election as declared by the board of elections would be different, and Kohler, Dittrick and McDonald would be elected.
Assuming that the 325 ballots marked with a cross opposite the name of Wilson were incorrectly counted, the 1,200 ballots affected by the testimony offered could not change the result; and if it be a requirement of the law that sufficient number of ballots must be questioned, then this case is ended. In the case of Tarr v. Priest, 93 O. S., 199, only those ballots were counted of the various precincts with reference to which errors were alleged and claimed to have been made in the count.
What does prima facie case of fraud, error or mistake mean? Does it mean the mere showing of some errors, as claimed by the contestants? Was there ever an election held, and could there be one' held, from the lessons taught us in this case, in which it would be impossible to show some errors in the count? If that is all that’ is necessary to be shown, then the court would be obliged to order a recount of every election.
*92 But counsel for contestants claim that inasmuch as they have shown an average discrepancy in the count of over ten per precinct, that therefore the presumption arises that that average amount of errors occurred throughout the other precincts.
“There is no presumption that errors found will continue throughout the unattacked precincts or precincts in which there is no proof of error shown.” 106 Minn., 393-427.
If the essential elements of error or mistake, and that that error or mistake prejudiced the contestants, and that the prejudice must take the form of erroneously counted ballots in such number as to have changed the result as a rule of law, has been changed by the amendment of the statute in 1915 by inserting the prima facie case phrase, then what amount of proof is necessary to warrant a court in ordering a recount of the ballots? Will a mere showing of an average amount of errors per precinct constitute a prima facie case? If it does, then it seems to me that the evidence should be of such character that it would be some proof in support of all the necessary requirements to warrant the court in ordering a recount under the former rule, and the evidence in support of the claims of the contestants that he has established an average of errors per precinct should be clear and satisfactory.
“Prima facie evidence of a fact is such evidence as in judgment of law is sufficient to establish the fact, and, if not rebutted, remains sufficient for the purpose.” 97 U. S., 268.
Can proof be said to be clear and satisfactory in reference to the erroneous counting of ballots when the evidence in respect thereto relates to only one side of the ledger? This case is similar to a claim of A that B owes him, and a claim of B that A. owes B, and in A’s attempt to show and establish his claim, he shows errors only on one side of the ledger account, consisting of 568 transactions, without any showing as to the other side of the ledger account, except to the extent that the court made inquiry from time to time during the progress of the hearing, and which amounted to perhaps one-fifth of the witnesses called, and which disclosed that in the ease of those inquired of, there *93 were similar errors on the other side of the ledger. It appears to me that if a prima facie case may be said to have been established by showing an average of errors per precinct, that the burden rests upon the contestants to show by evidence tending to prove at least that the average of errors per precinct is substantial and in fact exists from an examination of the ballots of both parties.
There is a presumption that the certified canvas of the election officers is prima, facie correct, and to offset or overthrow that presumption requires at least some affirmative proof. Unless some proof is offered, the returns in the other precincts are correct. Inasmuch as they are presumed to be correct, reason for ordering a recount must be found in the precincts to which the testimony and evidence has been directed. Accepting the proof at its very best, only 1,200 ballots were affected. The plurality of Kelly over Dittrick is 2,522 votes. In no manner of counting, by addition or subtraction, could those 1,200 ballots change the result; and therefore Dittrick is not prejudiced by the careless and ignorant mistakes of the election officers in charge in the 75 booths in which these 1,200 ballots are claimed to have been erroneously counted.
For these reasons, the court will -dismiss the appeals in all the eases, and'enter judgment for the contestees. All costs taxed against the contestants.